**UNITED STATES of America**

v.

**James Henry MOORE, Appellant,**

and

**William Bradley.**

**No. 19206.**

United States Court of Appeals,
Third Circuit.

Argued Sept. 17, 1971.

Decided Dec. 22, 1971.

John F. Rodgers, Jr., Camden, N. J., for appellant.

James D. Fornari, Asst. U. S. Atty., Newark, N. J. (Herbert J. Stern, U. S. Atty., Newark, N. J., on the brief), for appellee.

Before BIGGS, ADAMS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

The appellant Moore was tried twice for armed robbery of the Livingston National Bank at Livingston, New Jersey. 18 U.S.C. § 2113(a) and (d). At the first trial the jury failed to reach a verdict. Moore was convicted at the second trial and has appealed.

A number of masked men entered the Bank on April 11, 1968 and robbed it. Because of the masks no positive identification was possible and no arrests were made for more than a year. In April 1969, FBI Special Agent Genakos discovered that Moore, who had lived in New Jersey and was under suspicion for the robbery of the Bank, had moved to Brooklyn. Six New Jersey State court indictments, one for a high misdemeanor, robbery, were pending against

Moore. Based on the State armed robbery indictment, on May 27, 1969, at about 6:00 A.M., Moore was arrested in Brooklyn on a complaint charging him with unlawful interstate flight from New Jersey to New York to avoid prosecution pursuant to the Fugitive Felon Act, 18 U.S.C. § 1073. After a search of his Brooklyn apartment he was taken to the 69th Street Detention Center of the FBI in Manhattan. He was not arraigned or brought before a magistrate in Brooklyn prior to his being taken to Manhattan but arrangements were made to bring him before a Commissioner of Brooklyn at 11:00 A.M. It is not clear at what time Moore arrived at the 69th Street Detention Center, nor does it appear precisely what he was questioned about but seemingly he was asked what he knew about a number of bank robberies, including that of the Livingston Bank. Moore made no incriminating statements, however, at the 69th Street Detention Center.[1] Between 9:00 and 10:00 A.M. that morning the FBI agents took Moore from the Manhattan Detention Center, met FBI agents from New Jersey at the Manhattan exit of the Holland Tunnel, and drove to the Federal Detention Center in Brooklyn. There was some interrogation of Moore during the ride and also, according to him, some threats.

Arriving at the Brooklyn Detention Center, further interrogation of Moore took place. The precise nature of this questioning is not clear but it would seem that Moore was again asked about a number of bank robberies, including

---

1. We have received through the mail from Moore's counsel and also from Moore himself the form (sometimes referred to as a "Miranda-type waiver") used by the FBI stating the rights of a suspect person and setting out a waiver of the right against voluntary self-incrimination. Moore signed this form, striking out the waiver portion and writing in longhand at the bottom of the document, the following: "James Moore declined to sign the form with the last paragraph included which pertains to making a statement however with that excluded agreed to execute it." The language quoted is in evidence. See Second Trial Transcript 2.59, Testimony of Agent Frank. The printed portions of this form are identical with those of the form used by the FBI in evidence as Exhibit G–3.

The form received as stated in the previous paragraph of this note is not to be confused with another Miranda-type waiver form signed by Moore in which he did waive his right against voluntary self-incrimination. We reiterate that the form last referred to is part of the record in this case and is designated as "Exhibit G–3".

that at Livingston. He made no inculpatory statements at this time, however. A United States Commissioner at the Brooklyn Detention Center arranged for him to be represented by counsel, and he pleaded not guilty to the complaint based on the Fugitive Felon Act. After this arraignment, he was returned to the Detention Center at 12:20 P.M. About 12:30 P.M. he signed a standard Miranda-form waiver. As we have stated in note 1, *supra*, the waiver is in evidence as G–3 and is in the usual general terms and is not limited as to any particular crime.

Moore's principal attack is upon the ruling of the District Court that his signing of the Miranda waiver and his subsequent confession were voluntary. He insists that he signed the Miranda waiver and confessed to the Livingston Bank crime because he was informed by Agent Genakos and other FBI agents that if he would "cop out" [2], [3] to the Livingston Bank robbery, Genakos and others would in some way relieve him of the New Jersey State indictments. He contends that he was overreached and compelled by the pressure of the agents to admit to the Livingston Bank crime. Moore signed no written statements and his inculpatory statements were first recorded in notes taken by Genakos and the original notes were later destroyed.

We note that a Jackson v. Denno [4] hearing was held by Judge Coolahan prior to the first trial. The transcript of the *Jackson* hearing covers over 100 pages and Moore testified on his own behalf. Judge Coolahan found his inculpatory statements to have been made voluntarily to the agents. It is for the trial judge to determine the weight and credibility of the evidence and we cannot say that Judge Coolahan's conclusion was clearly erroneous.

Moore contends that he was entitled to another *Jackson* hearing before or at his second trial. His present attorney says this is so because Moore did not have the benefit of counsel at the *Jackson* hearing and also there were witnesses available at the time of the second trial whose evidence would have militated against the conclusion that his confession or inculpatory statements were voluntarily made to the FBI agents. But the reason that Moore was without counsel at the *Jackson* hearing was that he rejected counsel and insisted on representing himself albeit counsel was designated by the Court to sit with him and that counsel in fact conducted Moore's examination at the *Jackson* hearing. As to additional witnesses, no offer was made by Moore to state their names or the nature of their evidence. In the light of these circumstances, we conclude that the District Court was correct in holding that the *Jackson* hearing did not have to be repeated in order to afford Moore his constitutional rights.

Moore also asserts that his confession is inadmissible because FBI Agent Genakos was unable to produce for his examination the original notes taken at Moore's questioning. We deem this contention to be without merit. The summary made by Genakos contains the inculpatory statements allegedly

2. *I. e.*, confess.

3. It should be noted that the transcript of the pretrial hearing before Judge Coolahan (p. 85) contains the following statements:
   "The witness (Moore): Agent Genakos stated verbally that I should stay in Federal custody to cop out to the bank charge. This is what he stated. He told me not to sign extradition, not to sign the waiver of my rights, to fight extradition.
   "Q. Who told you that?
   "A. Agent Genakos.
   "Q. But you did, anyway?
   "A. On the advice of my lawyer.
   "Q. Who was that?
   "A. I have his name written on my book."
   Counsel from the Public Defender's office testified at Moore's second trial that he gave no such advice to Moore but that his advice to him was to say nothing. See Second Trial Transcript 3.40–3.41.

4. See Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

made by Moore during his examination by the FBI agents and there is no doubt that under the Jencks Act. 18 U.S.C. § 3500(b), if the agents had the notes they would be required to produce them. However, Genakos' notes, taken in the presence of witnesses, were destroyed in good faith. There was no error here. Killian v. United States, 368 U.S. 231, 242, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961).

■ Moore also asserts that his confession was inadmissible because it was not made in the presence of court-appointed counsel. We know of no such condition of admissibility.

■ Citing Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), Moore contends that his confession or inculpatory statements were the fruits of an unlawful arrest. He seems to take the position that he could be legally held only on the crimes for which he was tried, i. e., those set out in the indictment in the instant case. This position cannot be sustained. The arrest based on the Fugitive Felon Act was valid [5] and he was legally detained on that charge.

■ Moore asserts that he was not brought promptly before a United States Commissioner for arraignment on the Fugitive Felon Act charge. Judge Coolahan took judicial notice of the fact that normally a Commissioner would not be available at six or seven o'clock in the morning. As we have stated, arrangements were made, however, to arraign Moore before a Commissioner in Brooklyn at 11:00 A.M. He was through his arraignment by 12:30 P.M. We cannot regard these facts as constituting unlawful delay.

■■ Moore asserts also that he was not promptly arraigned on the Livingston Bank robbery charge. The record is not clear but from his own testimony it appears that he was arraigned on May 28th in the Federal Building at Newark. On this appeal he has raised for the first time the provisions of the Omnibus Crime Control and Safe Streets Act, in particular 18 U.S.C. § 3501(c), and contends that his confession was improperly admitted because he was not brought before a magistrate on the Livingston Bank robbery charge until more than six hours after his confession in Brooklyn on May 27th. But insofar as the record before us shows, the provisions of the Act were not brought to the attention of the trial court and it is the rule of this court, as it is of other courts of appeals, not to pass upon issues not raised in the court below unless the error be so fundamental in nature as to deprive a party of fundamental justice.[6] We cannot deem that Moore has been denied any fundamental right by the admission into evidence of his confession in view of his signed and witnessed *Miranda* waiver. Moreover, as was said in United States v. White, 417 F.2d 89, 92 (2nd Cir. 1969), "It is sufficient to note that neither the language of § 3501 nor its legislative history indicate that Congress intended to expand the protection of potential criminal defendants beyond the scope of protection established by the *Miranda* line of cases."

Other issues raised by Moore do not require discussion.

The judgment will be affirmed.

---

5. Moore asserts that he did not flee New Jersey but went on a "vacation."

6. United States v. Provenzano, 334 F.2d 678, 690–691 (3d Cir. 1964); United States v. Vasen, 222 F.2d 3 (7th Cir. 1955) cert. denied 350 U.S. 834, 76 S.Ct. 70, 100 L.Ed. 744 (1955). See Rule 52 Fed.R.Crim.Proc., 18 U.S.C.