SCA SERVICES, INC., Petitioner,

v.

Hon. Robert D. MORGAN, Judge, United States District Court for the Southern District of Illinois, et al., Respondents.

No. 77–1194.

United States Court of Appeals, Seventh Circuit.

Submitted May 20, 1977.

Decided June 17, 1977.

Jerome P. Facher, James C. Donnelly, Jr., Boston, Mass., Max Wildman, Jerald P. Esrick, Chicago, Ill., for petitioner.

Clyde D. Stoltenberg, Rock Island, Ill., Richard N. Molchan, Bret S. Babcock, Peoria, Ill., C. William Garratt, Detroit, Mich., for respondents.

Before CUMMINGS, SPRECHER and BAUER, Circuit Judges.

PER CURIAM.

The petitioner, SCA Services, Inc. (SCA) is the plaintiff in *SCA Services, Inc. v. Lucky Stores, Inc.*, a civil action pending in the District Court for the Southern District of Illinois, Northern Division, before Judge Robert D. Morgan.[1] In October, 1976, SCA filed a "Motion to Disqualify", supported by affidavits, seeking the disqualification of Judge Morgan pursuant to 28 U.S.C. § 455, as amended in 1974, on three separate grounds: (1) the judge's brother is acting as a lawyer in the proceeding (*id.* § 455(b)(5)(ii)); (2) the judge's brother has an interest which could be substantially affected by the outcome of the proceeding (*id.* § 455(b)(5)(iii)); and (3) the judge's impartiality might reasonably be questioned under all the particular facts and circumstances of the case (*id.* § 455(a)). The motion to disqualify did not allege actual bias or prejudice on the part of Judge Morgan, but was based solely on the statutory grounds contained in section 455, which the petitioner believes require mandatory disqualification.

Judge Morgan denied SCA's motion to disqualify without a hearing and filed a "Memorandum of Decision" on November 2, 1976. The judge also denied SCA's request for an order allowing an interlocutory appeal. Three months later, on February 17, 1977, SCA filed a "Petition for Mandamus" in this Court seeking an order directing the respondent judge to refrain from presiding at further proceedings in *SCA Services, Inc. v. Lucky Stores, Inc.*, and to assign the case to another judge. Responses and a reply thereto have been filed. Although discovery and other proceedings have continued in the district court, the trial date has been indefinitely postponed pending resolution of this petition.

This is a case of first impression under 28 U.S.C. § 455, as amended, involving the mandatory disqualification of a federal judge based on relationship to counsel and on the appearance of partiality which might reasonably arise from the relationship.[2]

---

1. *SCA Services v. Lucky Stores, Inc.*, No. 75–0033–RI (S.D.Ill., filed Nov. 18, 1975).

2. In view of the fact that the action being taken by this Court has attributes of the exercise of the supervisory power of this Court, the opinion has been circulated among all of the judges of this Court in regular active service. A majority did not request a hearing *en banc*.

Chief Judge Fairchild and Judge Tone voted for hearing *en banc*. They particularly question whether any facts have been shown which could support a conclusion that Attorney Morgan has acted as a lawyer in this proceeding [a question undecided by the panel] or that he is known by Judge Morgan to have an interest that could be substantially affected by the outcome of the proceeding. They do not object to a holding that Judge Morgan's impartiality might reasonably be questioned under the particular circumstances (including the fact that Judge Morgan formerly practiced law with his brother, his brother is senior partner in the present firm, and the present firm is relatively small, and this question has been raised informally in several instances), and that he must therefore disqualify himself unless, after full

This case raises important public issues concerning the interpretation and application of the statute and affecting public confidence and trust in the impartiality of the judicial system.

## Legislative History

In 1972, the House of Delegates of the American Bar Association adopted a new Code of Judicial Conduct which advocated the "appearance of justice" standard for judicial disqualification.[3] One year later the Judicial Conference applied this new code to all federal judges, but it specifically provided that this adoption "did not abrogate or modify . . . conflicting provisions of [Federal] Statutes[4] 'which were considered to be less restrictive' ".[5] Finally, in 1974, Congress enacted the new section 455 which was designed to reconcile the 1972 Code of Judicial Conduct with the federal statutes.[6] Its purpose was to eliminate "dual standards, statutory and ethical, couched in uncertain language [that] had the effect of forcing a judge to decide either the legal or the ethical issue at his peril."[7] Congress also intended to overrule the concept that close cases involving disqualification should be resolved on the ground that a judge had a "duty to sit."[8]

Pertinent to this case are the following provisions of section 455:

"(a) Any justice, judge, magistrate, or referee in bankruptcy of the United States *shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.*

(b) He shall also disqualify himself in the following circumstances:

\* \* \* \* \* \*

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

\* \* \* \* \* \*

(ii) *Is acting as a lawyer in the proceeding;*

(iii) *Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding."* (Emphasis added.)

The new statute contains the general, all-inclusive objective standard of the 1972 Judicial Code: a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). In addition, subsections (b)(1), (2), (3), (4) and (5) provide for the mandatory disqualification of a judge in certain specific circumstances, such as where family or financial interests are involved.

In the underlying case none of the parties disputes that Donald A. Morgan is Judge Morgan's brother and that he is a senior partner in Davis & Morgan, the firm which has entered a general appearance for one of the parties in the district court litigation.[9] The parties dispute, however, whether or not this relationship mandates Judge Morgan's disqualification pursuant to 28 U.S.C. § 455(b)(5)(ii). SCA posits that when general principles of agency and partnership are applied in the factual setting of a law firm, Donald A. Morgan is "acting as a

---

disclosure, the parties waive the disqualification in accordance with 28 U.S.C. § 455(e). Judge Wood disqualified himself from participation in this case.

3. See *Note, Disqualification of Judges & Justices in the Federal Courts*, 86 Harv.L.Rev. 736 (1973).

4. See 28 U.S.C. §§ 47, 144, 455 (1970).

5. S.Rep. No. 93–419, 93d Cong., 1st Sess. 3 (1973).

6. Hearings on S. 1064 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary, 93d Cong., 1st Sess. (July, 1971–May, 1973).

7. H.R.Rep. No. 93–1453, 93d Cong., 1st Sess. 2 (1973), U.S.Code Cong. & Admin.News 1974, pp. 6351, 6352.

8. H.R.Rep. No. 93–1453, 93d Cong., 2d Sess. 5 (1974). *See, e. g., Wolfson v. Palmieri*, 396 F.2d 121 (2d Cir. 1968); *United States v. Hoffa*, 382 F.2d 856 (6th Cir. 1967).

9. It is also undisputed that Judge Morgan practiced law with his brother in a predecessor firm prior to his appointment to the bench ten years ago.

lawyer" regardless of his involvement or non-involvement in this case. Contrariwise, respondents urge that this position is specious because Donald A. Morgan has not performed any professional duties in this case since its initiation over one-and-a-half years ago. They are supported in their argument by Judge Morgan's own findings, after "specific inquiry," that Donald Morgan was not acting as lawyer in this case. (Petitioner's App. at D–3.)

■ On the basis of the undisputed facts in this case and the well-settled principles of agency and partnership law, it is clear that the appearance of Davis & Morgan in the case before Judge Morgan is the appearance of every lawyer in the firm, including Donald A. Morgan. A Formal Opinion issued by the A.B.A. Committee on Professional Ethics as long ago as 1931 opined that every member of a law firm is prohibited from accepting employment which another member could not accept because of a conflict of interest. See A.B.A. Comm. on Prof. Ethics, Formal Opinion No. 33 (1931). More recently this Court in a case involving a conflict of interest situation assumed this same ethical stance: "confidential information presumptively possessed by . . . [one attorney] would be imputed to the other members of the . . . firm." *Schloetter v. Railoc of Ind., Inc.*, 546 F.2d 706, 710 (7th Cir. 1976). Although *Schloetter* is distinguishable on the facts because it involved an order disqualifying an attorney from proceeding in a case, it does afford precedential value for applying partnership law to law firms. In addition, both Illinois case law and statutes support the principle that an agency relationship exists between partners of a law firm and between each partner and the firm itself. See *Schumann-Heink v. Folsom*, 328 Ill. 321, 159 N.E. 250 (1928); *Ill.Rev.Stat.* ch. 106½, §§ 11, 13, 15 (1975); see also *Restatement (Second) Agency* § 20, Comment e (1958).

## I.

■ Having decided that Donald A. Morgan is an attorney in this action by virtue of his relationship with the firm of Davis & Morgan is not to decide, however, that he is "acting as a lawyer" within the language and intent of § 455(b)(5)(ii). Although the statute on its face mandates recusal where "near relatives" are involved, the Senate hearings suggest disqualification was not intended to be automatic.[10] Rather, it was indicated that the limitations which had been recommended in the *Commentary* to Canon 3C of the Judicial Code and adopted by the 1973 Judicial Conference should continue to guide the judiciary when "near relatives" were involved.[11] The *Commentary* accompanying that section provides:

"The fact that a lawyer in a proceeding is affiliated with a law firm with which a lawyer-relative of the judge is affiliated does not of itself disqualify the judge. Under appropriate circumstances, the fact that 'his impartiality might reasonably be questioned' under Canon 3C(1), or that the lawyer-relative is known by the judge to have an interest in the law firm that could be 'substantially affected by the outcome of the proceeding' under Canon 3C(1)(d)(iii) may require his disqualification."

Because the legislative history of section 455 indicates that a judge would be advised to consider whether his near relative has "an interest in the law firm that could be 'substantially affected by the outcome of the proceeding'" or whether "'his impartiality might reasonably be questioned'", and because these two matters parallel the two other provisions of section 455 asserted by petitioner, a discussion of this issue will follow disposition of the other two objections. It must also be pointed out that petitioner's attempt to draw analogies to cases decided in other federal courts, while helpful in most circumstances, affords no guidance here because all of these decisions were rendered prior to the enactment of the amended section 455 during a period when

---

**10.** Senate Hearings on S. 1064, *supra* note 6 at 96.

**11.** *Id.*

judicial disqualification was decided under a more subjective standard.[12]

## II.

Petitioner's second contention is that the position of the judge's brother as a senior partner in Davis & Morgan makes disqualification mandatory under § 455(b)(5)(iii). SCA claims that Donald A. Morgan has an interest in the firm which is clearly a financial interest within the definition of 28 U.S.C. § 455(d)(4). As defined in that statute:

" 'financial interest' means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party."

See also *Ill.Rev.Stat.* ch. 106½, §§ 24, 26 (1975).

■ Because the underlying case from which this action arises involves claims and counterclaims of millions of dollars, it is arguable that Morgan's firm will earn substantial legal fees in this matter, a percentage of which will accrue to Donald A. Morgan. To respond to this argument, as did Judge Morgan, that if Bret S. Babcock, the attorney involved herein, was not working on this case, "he would be working productively on something else, so that any income differences based on the outcome of this case would clearly not be substantial" (Petitioner's App. D–4), sidesteps the issue. Attorney Babcock, a member of Morgan's firm, is working on this case, not another

one, and therefore, he and his firm will be remunerated for his efforts. All parties involved quite clearly have a present financial interest in the litigation and a resort to a hypothetical situation cannot eliminate the realities of the situation. Moreover, although the record does not include any direct evidence as to degree of financial benefit to the Davis & Morgan firm, it is undisputed that at least 35 days have been spent in pretrial discovery. Even though this case was not taken by Davis & Morgan on a contingent fee basis, a favorable outcome would obviously justify a higher fee. Taking judicial notice of reasonable attorney's fees in Illinois and applying to "substantially affected" the standard for having "an interest in the outcome" as described in *In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955),[13] it is apparent that Morgan's interest could be "substantially affected" and would be so known by the judge.

It is also arguable that Donald A. Morgan has other non-pecuniary interests in this litigation, for example, his interest in his and his firm's reputation and goodwill. The language of the amended statute, in contrast to its predecessor,[14] does not require that the interest be financial. Although the *Reporters's Notes* to the Code suggest that it is only "economic interests" which specifically require disqualification,[15] the Congressional drafters recognized that non-economic interests may affect a judge's

---

**12.** 28 U.S.C. § 455 (1970) provided: "Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, *is or has* been a material witness, or is so related to or connected with any party or his attorney as to render it improper, *in his opinion*, for him to sit on the trial, appeal, or other proceeding therein." (Emphasis added.)

**13.** In *In re Murchison, supra* at 136, 75 S.Ct. at 625, the Court stated:
"That interest [in the outcome] cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that 'every procedure which would offer a possible temptation to the average man as a judge * * * not to hold the balance nice, clear and true be-

tween the State and the accused, denies the latter due process of law.' *Tumey v. Ohio,* 273 U.S. 510, 532 [47 S.Ct. 437, 444, 71 L.Ed. 749]. Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.' *Offutt v. United States,* 348 U.S. 11, 14 [75 S.Ct. 11, 13, 99 L.Ed. 11]."

**14.** See Act of June 25, 1948, ch. 646, § 455, 62 Stat. 908, effective prior to 1947.

**15.** See *Reporter's Notes* to the A.B.A. Code of Judicial Conduct at 63, 66.

bias or prejudice.[16] *Public Utilities Commission v. Pollak*, 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068 (1952), presents a classic example. In that case Justice Frankfurter disqualified himself because he considered his emotions "so strongly engaged as a victim of the practice [of hearing radio programs broadcast on buses]". *Id.* at, 467, 72 S.Ct. at 823.

Without deciding that non-economic interests which can be considered as disqualifying under § 455(b)(4) were intended to be encompassed in § 455(b)(5)(iii), we do note that the possibility exists,[17] and under the facts of this case such interests are clearly apparent and to the judge's knowledge.

### III.

The third reason suggested for Judge Morgan's disqualification is that the judge's impartiality might reasonably be questioned under the broad and liberal purposes sought to be achieved by 28 U.S.C. § 455(a). Although the statute enunciates the appearance of partiality as the general standard for judicial recusal and the legislative history suggests that this standard is determined by reference to the reasonable person,[18] no factual or concrete examples of the appearance of impartiality were provided in the Congressional debates. Moreover, because a judge must apply the standard both as its interpreter and its object, the general standard is even more difficult to define. In spite of the philosophical dilemma created by this objective-subjective conundrum, it is clear to this Court that there exists a reasonable basis for the finding of the appearance of partiality under the facts and circumstances of this case.

This appearance of partiality begins with the natural assumption that brothers enjoy a close personal and family relationship and, consequently, would be inclined to support each other's interests. When one brother is a lawyer in the firm representing a party before his brother who is the judge in the case, the belief may arise in the public's mind that the brother's firm and its clients will receive favored treatment, even if the brother does not personally appear in the case.[19]

Further, the judge's "Memorandum of Decision" suggests that he made a confidential inquiry, presumably to his brother, to determine in what capacity Donald A. Morgan was involved in this case (Petitioner's App. D–3). Counsel were not present and were unaware of the inquiry at the time it was made. While it is understandable why the judge may have felt his brother could present the most accurate evidence as to his role in the pending litigation, the judge's inquiry creates an impression of private consultation and appearance of partiality which does not reassure a public already skeptical of lawyers and the legal system.

In sum, the circumstances of this relationship and the importance to each litigant of the outcome of his case might well make it reasonable for a member of the public or party or counsel opposed to question impartiality under Section 455(a).

Having determined that the judge's brother could have a substantial financial interest in the underlying litigation and that the present situation creates an appearance of partiality, it might also be

---

**16.** Senate Hearings on S. 1064, *supra*, note 6, at 41–52, 106–08. In this instance, the drafters were specifically concerned with § 455(b)(4).

**17.** For a discussion of this unresolved problem, see *Comment, The Elusive Appearance of Propriety: Judicial Disqualification under Section 455*, 25 DePaul L.Rev. 104, 116, 125–26 (1976); *Note, supra* note 3, at 754–55.

**18.** Senate Hearings on S. 1064, *supra* note 6, at 95.

**19.** Two affidavits accompanying the "Plaintiff's Motion to Disqualify" indicate that such an assumption has already in fact been made. For example, one affiant alleged that he had been told: "SCA does not have much of a chance in winning the lawsuit . . . [General Mill's] lawyer is the judge's brother." (Petitioner's App. C–1, 2). These affidavits were never refuted in the district court, although an unsigned counteraffidavit was filed with General Mill's Response in this Court. (Respondent's App. E.)

thought that in light of the *Commentary* to Canon 3C and the legislative history of Section 455, Donald A. Morgan was "acting like a lawyer" in this case. However, we do not decide this issue [20] because our agreement with petitioner's second and third contentions makes it unnecessary to do so.

█ Pursuant to section 455(a) and (b)(5)(iii), we hold that Judge Morgan should have granted the plaintiff's "Motion to Disqualify" and reassigned this case to the district judge for the Southern Division of his district or to a visiting judge. While we are indeed sympathetic to the practical reasons given by Judge Morgan for declining disqualification, Congress has chosen the other path.[21]

█ As a defense to the proceedings in this Court, respondent Lucky Stores claims that disqualification is not required because SCA has waived its right to enforce section 455. As evidence of its position Lucky Stores notes the numerous proceedings which have been had in this case since SCA learned of the existence of the familial relationship in February, 1976. Lucky Stores cites no case or other authority, however, to support its estoppel theory. Indeed, there is no basis in law to support this argument. The waiver section of § 455 provides:

> "no . . . judge . . . shall accept from the parties to the proceedings a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification."

The provisions are mandatory; they are addressed to the judge and require that he disqualify himself in certain circumstances. They were adopted because the drafters of the statute believed "that confidence in the impartiality of federal judges is enhanced by a more strict treatment of waiver." [22] They impose no duty on the parties to seek disqualification nor do they contain any time limits within which disqualification must be sought. Moreover, although the Department of Justice recommended that the new section 455 should include some limitation of time "to prevent applications for disqualification from being filed near the end of a trial when the underlying facts were known long before," (H.R.Rep. No. 1453, 93d Cong., 2d Sess. 9 (1974) U.S.Code Cong. & Admin.News, 1974, p. 6358), Congress did not incorporate this recommendation in the statute. Because it is obvious that any decision to deny disqualification based on grounds of waiver and estoppel would frustrate the purpose of the statute, these defenses to the petition are without merit.

█ In view of our finding that section 455 mandates judicial disqualification, our next consideration is whether or not mandamus is the appropriate remedy to secure this result. Traditionally, we have been extremely reluctant to make use of the extraordinary remedy of mandamus against a district judge. Indeed, we represent the minority position in the circuits and have heretofore not made the extraordinary writs of mandamus and prohibition available for review of a trial judge's ruling on a motion for disqualification for bias or prejudice under 28 U.S.C. § 144. *Action Realty Co. v. Will*, 427 F.2d 843, 845 (7th Cir. 1970); *Korer v. Hoffman*, 212 F.2d 211 (7th Cir. 1959). Nonetheless, we find that the specificity and legislative intent of section 455 are sufficiently different from section 144 as to warrant a departure from our previous position. Since disqualification is mandatory for several reasons, we find Judge

---

**20.** Because we leave open the question whether Donald A. Morgan was "acting like a lawyer" here, *Kesselhaut v. United States*, 555 F.2d 791 (U.S.Ct.Cls.1977), involving a law firm's possible disqualification, is not pertinent.

**21.** After deciding not to allow a waiver in certain factual settings, the drafters continued: "There are approximately 667 federal judges, active and retired. The statutes contain ample authority for chief judges to assign other judges to replace either a circuit or district court judge who becomes disqualified." 3 U.S. Code Cong. & Admin.News, 1974, at 6357.

**22.** *Id.* at 6357.

Morgan's failure to recuse himself an abuse of discretion. In accord with the views expressed herein, we direct that the writ issue forthwith directing the respondent to disqualify himself and reassign the case to another judge.