**UNITED STATES of America**

v.

**Harry SCHREIBER, Appellant.**

**No. 78–2140.**

United States Court of Appeals, Third Circuit.

Argued March 23, 1979.

Decided May 3, 1979.

James E. McLaughlin (argued), McArdle, McLaughlin, & McVay, Pittsburgh, Pa., for appellant.

Robert J. Cindrich, U. S. Atty., Edward J. Schwabenland (argued), Asst. U. S. Atty., Pittsburgh, Pa., for appellee.

Before SEITZ, Chief Judge, and ALDISERT and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The major question for decision is whether the trial judge committed plain error in failing *sua sponte* to recuse himself in a non-jury trial in which appellant, president of a motor carrier corporation, was adjudicated guilty of filing false and fraudulent statements with the Interstate Commerce Commission (ICC), in violation of 18 U.S.C. § 1001. The judge had previously presided over a jury trial in which the corporation and its general sales manager had been found guilty of similar charges. We find no plain error on the part of the trial judge, and we affirm the judgment of conviction.

Appellant Harry Schreiber, represented by privately retained counsel, requested a bench trial, fully aware that the same trial judge had presided two years earlier over a jury trial in which his company, Schreiber Freight Lines, and Joseph Bruzzese, its general sales manager, had been found guilty of filing false statements with the ICC and mail fraud. Corporate counsel had represented the defendants in the prior proceedings.

On appeal, Schreiber does not challenge the efficacy of his jury trial waiver. Nor does he argue that the trial judge was disqualified as a matter of law because he presided over the separate jury trial of related defendants. Indeed, at oral argument appellant conceded that he does not challenge the precept that a judge need not withdraw from a case merely because he or she has presided in a related or companion case. *See, e. g., United States v. Cowden,* 545 F.2d 257, 266 (1st Cir. 1976), *cert. denied,* 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977). Lastly, inasmuch as none of the three issues before us on appeal was raised in the district court, appellant is not contending that the trial judge erred in any ruling below.

Rather, through new counsel, appellant now contends that the failure of the judge to recuse himself was so egregious as to come within the plain error rule. "In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936). But a litigant cannot obtain a new trial because of alleged errors to which he assented during the first trial. "Any other course would not comport with the standards for the administration of criminal justice. We cannot permit an accused to elect to pursue one course at the trial and then, when that has proved to be unprofitable, to insist on appeal that the course which he rejected at the trial be reopened to him." *Johnson v. United States,* 318 U.S. 189, 201, 63 S.Ct. 549, 555, 87 L.Ed. 704 (1943).

This court has been hospitable to claims of plain error in direct criminal appeals when it has been convinced that the error is "grievous," *United States v. Gray,* 468 F.2d 257, 259 (3d Cir. 1972), or "so fundamental in nature as to deprive a party of fundamental justice," *United States v. Moore,* 453 F.2d 601, 604 (3d Cir. 1971), *cert. denied,* 406 U.S. 925, 92 S.Ct. 1794, 32 L.Ed.2d 126 (1972); *United States v. Dolasco,* 470 F.2d 1297, 1299 (3d Cir. 1972), *cert. denied,* 411 U.S. 919, 93 S.Ct. 1558, 36 L.Ed.2d 312 (1973); *United States v. Bazzano,* 570 F.2d 1120, 1128 (3d Cir. 1977), *cert. denied,* 436 U.S. 917, 98 S.Ct. 2261, 56 L.Ed.2d 757 (1978), or otherwise constitutes a "manifest miscarriage of justice," *United States v. Provenzano,* 334 F.2d 678, 690 (3d Cir.), *cert. denied,* 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544 (1964); *United States v. Grasso,* 437 F.2d 317, 319 (3d Cir. 1970), *cert. denied,* 403 U.S. 920, 91 S.Ct. 2236, 29 L.Ed.2d 698 (1971); *United States v. Hines,* 470 F.2d 225, 229–30 (3d Cir. 1972), *cert. denied,* 410 U.S. 968, 93 S.Ct. 1452, 35 L.Ed.2d 703 (1973). Fed.R.Crim.P. 52(b).

 It therefore appears that appellant's burden on a direct criminal appeal, when asserting that the failure of the trial judge to disqualify himself is plain error, may be heavier than under the accepted standard for reviewing judicial disqualification cases when the claim has first been asserted in the district court. In the latter cases the "proper inquiry on appeal is whether the district judge abused his discretion." *Mayberry v. Maroney*, 558 F.2d 1159, 1162 (3d Cir. 1977). *See United States v. Dansker*, 565 F.2d 1262, 1266–67 (3d Cir. 1977), *cert. dismissed*, 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978).[1]

It is against the plain error standard that we examine the specific argument of the appellant—a broad based contention that the trial judge was required to disqualify himself because he was plainly not an impartial jurist as required by 28 U.S.C. § 455:

(a) Any justice, judge, magistrate, or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

. . . . .

(e) No justice, judge, magistrate, or referee in bankruptcy shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

## I.

 To support his contention Schreiber first cites a passage from the memorandum opinion in the corporation's trial in which the district judge wrote, "The evidence of Wurzer particularly showed how the false communications were prepared and also showed knowledge on the part of Harry Schreiber, President of the defendant corporation of the preparation of the communications in question." Appellant's Brief at 7.

Schreiber says that "[t]his prior finding by the judge that was to preside as a factfinder in a subsequent trial *clearly* raises a reasonable question of impartiality . . ." *Id.* (emphasis added). In a review for plain error, we cannot discover in the prior finding of the district court a reasonable basis for doubting the court's impartiality. If the statement should have raised a reasonable question of disqualification, it certainly did not occur to appellant or his counsel to raise it on December 12, 1977, when appellant requested that the judge who wrote these words about him in November 1976 should sit as fact finder in his criminal trial. Section 455(e) precludes waiver of a charge of personal bias under § 455(b). The conduct of appellant in requesting the non-jury trial is relevant, however, to the question, under § 455(a), of whether the judge's "impartiality might reasonably be questioned," because disqualification under § 455(a) may be waived after full disclosure. The House report accompanying § 455 emphasized:

Disqualification for lack of impartiality must have a *reasonable* basis. Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice.

H.R.Rep. No. 1453, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 6351, 6355.

---

1. Other circuits have also applied the abuse of discretion standard. *SCA Services, Inc. v. Morgan*, 557 F.2d 110, 118 (7th Cir. 1977); *United States v. Haldeman*, 181 U.S.App.D.C. 254, 559 F.2d 31, 139 n.359 and accompanying text (D.C. Cir. 1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).

Appellant points to a statement of the trial judge, made in the course of post-trial argument, which he characterizes as a recognition by the judge of his partiality. As we understand his argument, it is that when a judge entertains doubts as to his own impartiality he has the obligation to articulate those doubts publicly and that failure to do so is plain error. The following colloquy is urged as the basis for disqualification under this argument:

THE COURT: Let me say, also, I presided over the first trial, and I was concerned as to whether I should preside over this trial. But nobody raised any question about it; and in my own mind, at the conclusion of the first trial, I said when I began to become aware of what was going on, I began to wonder about Harry Schreiber's involvement, and I concluded the first trial with the thought in my mind the government did not have sufficiently clear evidence that Harry Schreiber was involved to justify his indictment.

Now that was my conclusion at that time. So I started the second trial with that in mind, that the government had better have some pretty good evidence to bring him in personally.

[DEFENSE COUNSEL]: I will state to Your Honor that that consideration was fully explored by myself and my client, whether we should object to Your Honor sitting at a non-jury trial, having heard the first trial. It was our conclusion that you would be fair in the determination of these issues, and we did not raise the objection.

Appendix at 67a–68a.

We recognize the sound public policy considerations that would militate for the adoption of the *per se* rule urged upon us. A public expression would alert the litigants to the existence of problems which would otherwise remain undisclosed. The necessity for the rule—that the parties should be apprised of any possible ground for disqualification known privately to the judge—is therefore the reason supporting the rule.

Whatever our inclination would be in a case where we found reason for such a rule, we find none here. The appellant acknowledged that he had entertained the same doubts as the judge, and like the judge, he rejected those doubts. Appellant's counsel unequivocally stated that "that consideration was fully explored by myself and my client, whether we should object to Your Honor sitting at a nonjury trial . . . ." *Id.*

Since there was knowledge of the problem in this case, there was no need of a public communication from the judge. Whatever appeal the proposed rule might have under different facts, in this case there is no necessity, and hence no reason for adoption of the rule. Karl Llewellyn's elegant statement of the old maxim seems most apropos: the rule follows where its reason leads; where the reason stops, there stops the rule.[2]

This consideration aside, we do not regard the judge's statement as one of "personal bias or prejudice." If anything, it is but a restatement of the presumption of innocence for the judge to say "the government had better have some pretty good evidence to bring him in personally."

II.

Appellant next contends that there was evidence that the trial judge had a "personal bias or prejudice" against all presidents of motor carriers, a state of mind he acquired from his previous personal experience as a lawyer who appeared regularly before the ICC. Appellant relies on the following colloquy:

THE COURT: Schreiber Freight paid a civil forfeiture of $2,000 for twenty violations of operating beyond the scope of its authority. January '74 to July '74, Schreiber was again found guilty of 61 violations of operating beyond the scope of authority.

The Court considers this as some evidence of intent and attitude of the de-

2. K. Llewellyn, The Bramble Bush 157–58 (1960).

fendant towards the ICC rules and regulations.

MR. MARTIN: Is the intent and attitude of the individual defendant properly affected by the corporate pleas to these civil forfeitures? That's the issue that I raise.

THE COURT: Well, he is president and sole stockholder of this corporation. It seems to me it is some indication of an attitude, "To the dickens with the ICC. Anything you get away with is okay as far as the ICC goes."

Appendix at 55a–56a.

THE COURT: In the early days of the Motor Carriers Act, I think there were a larger number of people who were presidents of trucking companies who would come up the hard way from practically nothing, who displayed this attitude towards the Commission, than there are now.

The attitude in the early days was, "Do anything you can get away with, as far as the Commission is concerned."

MR. SCHWABENLAND: From my understanding from working with the ICC people, I think that attitude is still going on.

THE COURT: I once recall a remark I heard after a hearing with respect to a president of a trucking line in the South, who I will not name.

One man says, "I know him. I believe him any time except when he is under oath in an ICC hearing."

And that was the attitude.

MR. SCHWABENLAND: Mm-hmm.

THE COURT: It seems to me that attitude or any attitude of that kind has some bearing upon the guilt or innocence of Mr. Schreiber here.

MR. SCHWABENLAND: Yes, Your Honor.

You have often stated throughout the trial that you as an ex-ICC attorney know what goes on in the ICC. I don't know what that had to play upon your impression of the facts, but you are the trier of facts.

We both agree—

THE COURT: Well, I tried to keep anything like that that I might know personally, because some of the things I have been mad at the ICC about, too, here.

MR. SCHWABENLAND: Yes, Your Honor.

THE COURT: So many people get away, and then other times I thought they were a little harsh. But that really has not colored my thinking here at all.

Appendix at 64a–65a.

We do not agree that these statements constitute evidence of personal bias or prejudice. Distilled to their essence, they simply reflect his past impressions of *both* motor carrier presidents *and* the ICC. This court has held that evidence of an *impersonal* prejudice deriving from the judge's background and associations, rather than his appraisal of the parties personally, is not a proper basis for disqualification. *United States v. Dansker*, 537 F.2d 40, 54 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); *Parker Precision Products Co. v. Metropolitan Life Insurance Co.*, 407 F.2d 1070, 1077–78 (3d Cir. 1969).

## III.

■ Schreiber also alleges that he had ineffective assistance of counsel in the district court. Unlike the question of the trial judge's disqualification, which the district court arguably considered even though no objection was lodged prior to appeal, we find that the incompetency of counsel issue was never presented to the district court. "We decline to consider that claim, believing it preferable to follow the normal procedure of having the issue appropriately presented to the district court in the first instance." *United States v. Garcia*, 544 F.2d 681, 684 n.1 (3d Cir. 1976). In *United States v. Bazzano*, 570 F.2d 1120, 1128 (3d Cir. 1977), *cert. denied*, 436 U.S. 917, 98 S.Ct. 2261, 56 L.Ed.2d 757 (1978), this court also refused to pass on an ineffective assistance of counsel claim because it was not plain error.

■ Finally, appellant attacks the imposition of a sentence of 18 months, when he might have received 35 years imprisonment. It is settled that although sentencing procedures may be reviewed, the product of a sentencing court's exercise of discretion is not reviewable. *Del Piano v. United States*, 575 F.2d 1066, 1067 (3d Cir. 1978).

The judgment of the district court will be affirmed.

SEITZ, Chief Judge, concurring.

Although I agree with the majority that we should affirm Schreiber's conviction and sentence, I would do so without disturbing Schreiber's right to seek collateral review of either his claim that the district court violated 28 U.S.C. § 455 or his claim of ineffective assistance of counsel. I write separately because it is not at all clear to me whether the majority decides the merits of Schreiber's claim under section 455.

Schreiber argues for the first time on appeal that the trial judge erred in not disqualifying himself under section 455. I start, as I must, from the general proposition that "[a]llegations of error not properly raised in the trial court cannot be considered on appeal." *United States v. Carter*, 401 F.2d 748, 750 (3d Cir. 1968), *cert. denied*, 393 U.S. 1103, 89 S.Ct. 905, 21 L.Ed.2d 797 (1969). A narrow exception to the rule that appellate courts may not consider claims *de novo* is the doctrine of "plain error." *See* Fed.R.Crim.P. 52(b). This exception allows an appellate court, in "exceptional circumstances," to notice obvious errors or errors that "seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936). The price an appellant pays for his failure to object is a heavier burden of persuasion. He must show that the error was plain.

Like the majority, I believe that it is inappropriate to take cognizance, under the plain-error doctrine, of Schreiber's claim that the district court violated section 455. But while the majority concludes that the alleged error was not serious enough to merit reversal, I conclude that the plain-error doctrine itself is ill-suited to resolution of the issue in this case. That doctrine's narrower scope of review is predicated on the appellant's duty to call error to the attention of the district court: "a party may not sit by silently, take his chances on a verdict, and, if it is adverse, then complain of a matter which, if error, could have been eradicated during the trial if brought to the attention of the court . . . ." *United States v. Bamberger*, 456 F.2d 1119, 1131 (3d Cir. 1972), *cert. denied*, 406 U.S. 969, 92 S.Ct. 2424, 32 L.Ed.2d 668 (1972), 413 U.S. 919, 93 S.Ct. 3067, 37 L.Ed.2d 1046 (1973). Here, however, Schreiber was under absolutely no duty to object. Section 455 is mandatory in its terms. A judge must determine, *sua sponte*, whether any of the grounds for disqualification enumerated in that provision are present in a case. If any ground specified in section 455(b) is present, he must disqualify himself immediately. If such specific grounds are not present, but if, for any reason, "his impartiality might reasonably be questioned[,]" he must either disqualify himself or seek a waiver after "full disclosure on the record." *See* 28 U.S.C. §§ 455(a), 455(e). All this must be done, if necessary, on his own motion. As the Seventh Circuit has noted, section 455 "impose[s] no duty on the parties to seek disqualification nor [does it] contain any time limits within which disqualification must be sought. *SCA Services, Inc. v. Morgan*, 557 F.2d 110, 117 (7th Cir. 1977).

Apparently, the district judge misunderstood his obligations under section 455. The subject of impartiality was not broached until the hearing on Schreiber's motion for a new trial. Although Schreiber had not raised this issue in his motion, the judge spontaneously remarked that he had been "concerned" about presiding at the trial. The district judge's own doubts suggest, although they do not necessarily establish, that his impartiality might reasonably be questioned. If the district judge had decided, in the sound exercise of his discretion, that such a question existed,

then he would have been obligated in the absence of a valid waiver to disqualify himself from the case. Instead, he neither acted on nor disclosed his concern because "nobody raised any question about it[.]"

Assuming that the district court should have sought Schreiber's waiver, I have several doubts as to whether the colloquy cited by the majority can measure up to the strict standard for waiver set forth in section 455(e). First, the dialogue seemed to occur accidentally, after a full trial and long after the district judge first became concerned about presiding. Moreover, the district judge's offhand expression of that concern may fall far short of the requisite "full disclosure on the record." Finally, defense counsel's unsolicited statement that he had "fully explored" the situation and that he "did not raise the objection" is ambiguous. He seemed to be referring, not to a present waiver, but to a prior decision not to seek disqualification, a decision made without the benefit of any disclosure whatsoever. Counsel may not have understood that, even at that late moment in the proceedings, Schreiber still had a right to seek the judge's disqualification.

These difficult questions, never aired below, illustrate the awkwardness of a plain-error inquiry in this case. I believe that Schreiber's claim that the district court violated section 455, like his claim of ineffective assistance of counsel, is better suited to collateral attack under section 28 U.S.C. § 2255. I fear, however, that the majority's decision may prejudice his ability to secure collateral relief. In *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1962), the Supreme Court set forth the criteria for evaluating successive petitions under section 2255. Where a prisoner presents a petition relying on a ground denied "on the merits" in an earlier petition, the prisoner bears the burden of demonstrating that "the ends of justice would be served by a redetermination of the ground." *Id.* at 17, 83 S.Ct. at 1078. *See also* Rule 9, Rules Governing § 2254 Cases, and Rule 9, Rules Governing § 2255 Cases, and accompanying Advisory Committee Notes (codifying holding in *Sanders*). Although *Sanders*

dealt with successive petitions for collateral relief, the Supreme Court has indicated that the same standards should govern an initial petition under section 2255 "where the trial or appellate court has had a 'say' on the federal prisoner's claim." *Kaufman v. United States*, 394 U.S. 217, 227 n.8, 89 S.Ct. 1068, 1074, 22 L.Ed.2d 227 (1969). *See also Davis v. United States*, 417 U.S. 333, 342, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974); *Thornton v. United States*, 125 U.S.App. D.C. 114, 368 F.2d 822, 833 (1966) (Wright, J., dissenting), *cited with approval in Kaufman v. United States, supra*, 394 U.S. at 227 n.8, 89 S.Ct. 1068.

I refrain from deciding whether we have had a "say" on Schreiber's claim under section 455, or whether a determination that a particular action is not plain error constitutes a decision "on the merits" of an issue. *Compare United States v. Currie*, 589 F.2d 993, 994–95 (9th Cir. 1979) (finding of no plain error on direct appeal precludes similar claim on collateral attack) *with United States v. Kazni*, 576 F.2d 238, 242 (9th Cir. 1978) (finding of no plain error on direct appeal will not preclude collateral attack if applicant alleges facts outside the appellate record). I only note that if we have triggered *Sanders*, Schreiber will bear the additional burden on collateral attack of demonstrating that the "ends of justice" would be served by a re-examination of his claim. On the other hand, if we somehow have stopped short of a determination on the merits of Schreiber's claim, then our decision seems a useless exercise. In either case, I believe it preferable to defer on the merits of Schreiber's claim under section 455, just as we have deferred on his ineffective-assistance-of-counsel claim. Schreiber is entitled to full consideration of each claim by a district court in the first instance, without the inhibitive effect of the majority's thoughts on the claims.

I would affirm Schreiber's conviction without expressing any opinion on the merits of either his claim under section 455 or his claim of ineffective assistance of counsel.