**UNITED STATES of America**

v.

**Thomas A. DALFONSO, Appellant.**

**No. 82–5376.**

United States Court of Appeals, Third Circuit.

Argued Feb. 18, 1983.

Decided May 12, 1983.

As Amended May 17, 1983.

---

James K. O'Malley, Pittsburgh, Pa., for appellant.

J. Alan Johnson, U.S. Atty., Constance M. Bowden, Asst. U.S. Atty., Pittsburgh, Pa., for appellee.

Before GIBBONS, HUNTER and ROSENN, Circuit Judges.

## OPINION OF THE COURT.

ROSENN, Circuit Judge.

Appellant Thomas A. Dalfonso was tried to a jury and convicted in the United States District Court for the Western District of Pennsylvania of distributing and conspiring to distribute the narcotic dilaudid in violation of 21 U.S.C. §§ 841(a)(1) and 846. He appeals his conviction and sentence of five years imprisonment and fine, contending that the trial judge committed reversible error by (1) failing to recuse himself, and (2) permitting a government witness to invoke the fifth amendment on cross-examination. We see no merit in these contentions and therefore affirm.

### I.

The events leading to Dalfonso's conviction began in August 1981 when Joseph Carbone, a professional "confidence man," communicated with the Federal Bureau of Investigation (FBI) and offered his services as a government informant. In return, Carbone sought to have the Government report his cooperation to the state authorities so that he might effect a reduction of his sentences for two crimes of which he had already been convicted. Carbone and the Government were able to strike a bargain and Carbone became an informant.

Assuming his role as informant, Carbone described for the FBI his contacts with appellant Dalfonso and one Fred Kovalchuk. Dalfonso and Kovalchuk recently had boasted to Carbone of the money to be made in selling dilaudid, and offered to supply Carbone with the drug if he were interested in dealing. Carbone had turned down this offer at the time, but at the Government's behest, Carbone renewed his contacts with Dalfonso and told him that he was interested in purchasing a large quantity of dilaudid. Dalfonso made arrangements for the transaction through Kovalchuk. Dalfonso completed the sale at the Inn America, New Stanton, Pennsylvania, in the presence of an FBI agent posing as a

friend of Carbone. Dalfonso and Carbone completed a second sale several days later, and following an aborted third sale shortly thereafter, Dalfonso and Kovalchuk were indicted and charged with violating federal narcotics laws.

At the pretrial hearing a notable incident occurred, forming the basis for one of Dalfonso's allegations of error. The Assistant United States Attorney assigned to the case apprised the court that an informant (not Carbone) had notified the FBI that the prosecutor and one of the defense attorneys were going to fix the case. This informant later changed his story and said that one of the defense attorneys was going to fix the case with the court.[1] The judge replied that he was friendly with defense counsel, as he was with many other lawyers at the bar of Western Pennsylvania, but was not going to fix the case.

This exchange apparently stimulated co-defense counsel to come forward with related information. According to him, a former client of the district judge when he was a practicing lawyer, one Henry Richitelli, who had since acquired a lengthy criminal record, had telephoned defendant Dalfonso's father, a former Mayor of Monessen, Pennsylvania, and told him that the case could be fixed through the judge's former preceptor and friend. Dalfonso's father responded that he was not interested. Richitelli later telephoned Dalfonso's father again, telling him that a sum of $100,000 had been made available for the benefit of his son's codefendant, Kovalchuk, for delivery to the judge through his former preceptor. Again, Dalfonso's father turned down the offer.

The trial judge disclaimed having any contact with Richitelli since he represented him "years ago in a tax matter," denied an effort had been made by anyone to bribe him, and directed that an FBI investigation be made of the alleged improprieties. Next, following an off-the-record conversation with counsel, the judge announced that he was recusing himself from the case and would have it reassigned to another judge. The judge then held further off-the-record discussions with counsel in chambers. At the close of these discussions he announced that after further reflection, he had concluded that to recuse himself would set an undesirable precedent, and after conferring with the United States Attorney and defense counsel, he decided to vacate the recusal order and hear the case. Both counsel for the defendants assented without comment.

At trial Dalfonso did not deny that he had performed the criminal acts charged, but instead asserted the affirmative defense of entrapment. To prove that he was entrapped, Dalfonso sought to introduce evidence showing that Carbone was a professional confidence man who might easily frighten or persuade even a person of reasonable firmness to perform acts against his better judgment.

Prior to trial, the court had ruled that the defense would be permitted to introduce evidence of Carbone's prior convictions for impeachment purposes, but that the defense could not question Carbone about certain activities appearing on his rap sheet for which he had not been convicted. Carbone's conviction record included three counts of theft, burglary, larceny, and receiving stolen goods, a firearms violation, making an illegal threat, and most recently, theft and conspiracy.

Subsequently, the prosecution at trial asked Carbone on direct examination to explain certain criminal activities to which he had referred in a taped conversation with Dalfonso. Specifically, government counsel inquired what Carbone meant by the terms "rip-off" and "scam," and whether he had not in fact engineered numerous "rip-offs" in the past. At this point, defense counsel asserted that the door had been opened and that the defendant should now be permitted to cross-examine Carbone concerning fraudulent activities with which he had been involved, but for which he had not been convicted. The court agreed and ruled that

---

1. The trial judge requested the name of the FBI informant, but the Assistant United States Attorney declined to reveal the informant's name in open court.

Dalfonso could question Carbone concerning his alleged prior "rip-offs" subject only to Carbone's right to invoke his privilege against self-incrimination.

Ultimately, Carbone testified extensively concerning scams he had perpetrated, but invoked his fifth amendment privilege not to testify concerning one particular scam involving the sale of gold Kruggerands and the alleged threat to kill one of the victim's daughters if he turned Carbone in to the police.[2] Notwithstanding all of the above evidence directed to Carbone's character, Dalfonso did not succeed with his entrapment defense and the jury convicted Dalfonso on all counts of the indictment.[3]

## II.

We first address Dalfonso's contention that the trial court's failure to recuse constituted reversible error. At the outset we observe that a federal trial judge's decision with respect to recusal may be reversed only for abuse of discretion. *Johnson v. Trueblood,* 629 F.2d 287 (3d Cir. 1980), *cert. denied,* 450 U.S. 999, 101 S.Ct. 1704, 68 L.Ed.2d 200 (1981); *Mayberry v. Maroney,* 558 F.2d 1159 (3d Cir.1977). Furthermore, in cases such as this, where no objection to the district court's failure to recuse was made at trial, a plain error standard of review applies. *United States v. Schreiber,* 599 F.2d 534 (3d Cir.), *cert. denied,* 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979). This standard is, if anything, even more rigorous than the abuse of discretion standard. As we observed in *Schreiber,* the error must be egregious or otherwise constitute a manifest miscarriage of justice. *Id.* at 535. With this plain error standard of review in mind, we turn to the appellant's argument that the trial judge was required to disqualify himself because his impartiality in this case "might reasonably be questioned."

Dalfonso presses his recusal argument under 28 U.S.C. § 455(a). That section provides: "Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The above language has been interpreted to mean that a judge should recuse himself where a reasonable man knowing all the circumstances would harbor doubts concerning the judge's impartiality. *United States v. Poludniak,* 657 F.2d 948 (8th Cir.1981), *cert. denied,* 455 U.S. 940, 102 S.Ct. 1431, 71 L.Ed.2d 650 (1982).

We see no reason why any reasonable person familiar with the facts of this case would question the trial judge's impartiality. First, there is nothing in either the record or in the briefs submitted by the parties to suggest that the allegations of judicial corruption in this case had any reasonable basis in fact. On the contrary, the trial judge's prompt decision to order an FBI investigation speaks for the emptiness of the allegations. The investigation ordered by the trial judge vindicated him. As the Government asserts in its brief to this court, "The FBI subsequently investigated the matter and found that all of the allegations made by the various sources were without substance." Second, the trial judge had no reason to, nor is there any evidence that he did, hold Dalfonso responsible for the incident. Third, there is nothing in this record to warrant the fear that the judge had become so emotionally involved by the disclosures of possible efforts to corrupt that his ability to preside impartially might reasonably be questioned. On the contrary, it appears that defense counsel believed that the judge would be able to preside over the case in an impartial manner for they both readily assented to his decision to hear the case.

Finally, important considerations weighed against recusal. When the trial judge refused to recuse because of his concern that the recusal, under the circumstances, might set an undesirable precedent,

---

2. Carbone asserted his fifth amendment right not to testify concerning the Kruggerand scam through counsel in chambers. The jury never heard Carbone "take the fifth."

3. Dalfonso's co-defendant, Kovalchuk, was also convicted. Kovalchuk apparently took no appeal.

he may have recognized the temptation that such a procedure offered to defendants ready to seize upon any opportunity to avoid trial before a particular judge. An anonymous telephone call to the FBI or to the judge himself, or a telephone call to the prosecuting attorney by an impostor falsely claiming that an effort was being made to influence or even corrupt the trial judge, might open avenues for judge shopping by impelling the trial judge to recuse. We cannot reasonably call into question the impartiality of a presiding judge upon so tenuous a basis as a telephone call, made by a meddler or even an accused, suggesting that the judge might succumb to improper inducements.[4]

This potential judge shopping problem was not lost upon the framers of the federal recusal statute. In the House Report accompanying the bill they cautioned:

> Disqualification for lack of impartiality must have a *reasonable* basis. Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice.

H.R.Rep. No. 1453, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 6351, 6355. There is no reasonable basis in this record to question the judge's impartiality. A decision to recuse in the instant case might encourage false impugnment of the integrity of trial judges as a tactic in future cases.

 In view of all of the above circumstances and considerations, we cannot say that the trial judge plainly erred or even abused his discretion by refusing to recuse himself.[5]

### III.

Having disposed of Dalfonso's recusal challenge, we briefly consider his contention that the trial court committed reversible error by permitting government witness Carbone to assert the fifth amendment on cross-examination. Prior to trial, the court had ruled, as previously mentioned, that defense counsel would be permitted to cross-examine Carbone concerning his prior convictions but not as to offenses on his rap sheet not resulting in convictions. At trial, however, when the prosecution on direct examination elicited information from Carbone that he had engineered a number of "rip-offs," the court expanded its initial ruling and permitted the defense to question Carbone concerning any alleged prior "rip-offs" without regard to criminal conviction, reserving, however, the witness' right to invoke his fifth amendment privilege against self-incrimination. Dalfonso contends that the trial court, pursuant to Fed. R.Evid. 608, should have admitted testimony concerning Carbone's involvement in the Kruggerand scam, a scam which allegedly occurred during the same period as covered by the instant indictment, and that the court erred by permitting Carbone to assert the fifth amendment privilege.[6]

---

4. We have no reason to believe that the trial judge thought that defense counsel in this case had fabricated events in the hope of persuading the court to recuse. Defense counsel did not mention the Richitelli incident until the prosecution had first raised the story of the FBI informant. Finally, the judge was on friendly terms with one of the defense attorneys and unequivocally expressed his belief that he thought him to be an honorable man. Thus, the court would have little cause to suspect defense counsel of attempting to manipulate the court.

5. The Government does not allege that defendant waived his right to challenge the judge's decision to sit. As we see nothing violative of 28 U.S.C. § 455(a) in the court's conduct, we need not raise the waiver issue *sua sponte. See United States v. Nobel*, 696 F.2d 231, 238 (3d Cir.1982) (Rosenn, J., concurring).

6. The defendant also contends that the court erred in permitting Carbone to invoke the fifth amendment privilege with respect to another "scam" concerning the defrauding of a large number of people in Westmoreland County in a proposed sale of television sets. The witness, however, did not invoke the fifth amendment with respect to the television sets. His counsel reported to the court that Carbone would answer questions with respect to the television

In his brief in this court, Dalfonso explains that his purpose in attempting to cross-examine Carbone with respect to the Kruggerands was "to show that at the same time Carbone was convincing [Dalfonso] to get drugs, he was convincing other people to give him great sums of money for nonexistent gold Kruggerands and bargain televisions." Evidence of Carbone's prior "rip-offs" was of course admissible only to impeach Carbone's credibility. Dalfonso was not entitled to introduce evidence of Carbone's previous scams to demonstrate Carbone's propensity to defraud or influence his victims, and to suggest that Dalfonso himself had been tricked into doing what he ought not do. *Compare* Fed.R. Evid. 608(b) *and* 609(a) *with* Fed.R.Evid. 404(b).[7]

We need not address the question of whether Carbone, by taking the stand or by testifying concerning his history as a confidence man, waived his right to remain silent with respect to the alleged Kruggerand scam for which he had not been tried or even charged.[8] In view of the extensive testimony offered concerning Carbone's convictions, prior "rip-offs," and method of operation, testimony concerning the Kruggerand scam would have been merely cumulative. We cannot believe that such cumulative testimony could have substantially influenced the jury's assessment of Carbone's credibility, *see generally Government of the Virgin Islands v. Ruiz,* 495 F.2d 1175, 1180 (3d Cir.1974), and its exclusion was within the broad discretion of the trial court, Fed.R.Evid. 403; *Government of the Virgin Islands v. Ruiz, supra,* 495 F.2d at 1177. A criminal defendant is not entitled to a new trial merely because a government witness has exercised his fifth amendment privilege to remain silent during cross-examination on a collateral matter relating to credibility. Rather, the defendant must at least show a substantial danger of prejudice flowing from the absence of such testimony. *United States v. Newman,* 490 F.2d 139, 145 (3d Cir.1974). We see no such danger of prejudice here in light of the cumulative nature of the proposed collateral inquiry.

The judgment of the district court will be affirmed.

---

sets and deny any wrongdoing. He would however, refuse to testify concerning the alleged sale of gold Kruggerands on fifth amendment grounds. The court thereupon directed counsel not to cross-examine the witness concerning the Kruggerands but to "go ahead on the televisions."

7. Fed.R.Evid. 608(b) provides in relevant part:
 Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of *truthfulness or untruthfulness, be inquired* into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness . . . .
 Fed.R.Evid. 609(a) provides in relevant part:
 General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but

only if the crime . . . (2) involved dishonesty or false statement . . . .
 Fed.R.Evid. 404(b) provides:
 Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

8. We note in passing that we are not impressed with Dalfonso's argument that Carbone waived his fifth amendment rights simply by taking the stand. Fed.R.Evid. 608(b) explicitly provides that "[t]he giving of testimony, whether by an accused or by any other witness, does not operate as waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility." *See also United States v. Newman,* 490 F.2d 139, 145 (3d Cir.1974).