UNITED STATES of America

v.

MARTORANO, George, a/k/a Cowboy.

Appeal of George MARTORANO.

No. 88–1348.

United States Court of Appeals,
Third Circuit.

Argued Oct. 5, 1988.
Decided Jan. 11, 1989.

---

Christine E. Yaris (argued), Gerald L. Shargel, New York City, for appellant.

Patty Merkamp Stemler (argued), U.S. Dept. of Justice, Appellate Section, Criminal Div., Washington, D.C., Louis R. Pichini, Philadelphia Strike Force, Philadelphia, Pa., for appellee, U.S.

Before HIGGINBOTHAM, MANSMANN and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

In this case, the appellant, George Martorano ("Martorano"), appeals from a judg-

ment of conviction entered after resentencing upon a plea of guilty to all 19 counts of a narcotics indictment, including one count of managing a continuing criminal enterprise. Martorano also challenges the sentence of life imprisonment without possibility of parole that was imposed on him both at the first sentencing proceeding and on resentencing. Martorano makes many arguments concerning issues that have already been addressed by an earlier decision of this Court,[1] and therefore we do not discuss them here. In his remaining arguments, Martorano argues that the sentence imposed violated the Eighth Amendment. He also argues that the district judge abused his discretion in not recusing himself because of the alleged appearance of impropriety given by the district judge's having testified, after Martorano's initial sentencing, at the tax evasion trial of Martorano's then counsel. Martorano further alleges that the district judge held an improper bias against Martorano because one of Martorano's codefendants had accused the district judge of physically assaulting the co-defendant during the co-defendant's separate criminal trial.

We hold that a sentence of life imprisonment without possibility of parole does not violate the Eighth Amendment where defendant pled guilty to charges of masterminding a conspiracy that distributed drugs in wholesale quantities. We also hold that the district court did not abuse his discretion by denying the motions to recuse. Accordingly, we will affirm the judgment of conviction and sentence.

### I.

Martorano pled guilty to charges that he had been a wholesale distributor of large amounts of cocaine, methamphetamine, methaqualone, and marijuana. The indictment also alleged that Martorano had con-

1. *See United States v. Martorano,* 782 F.2d 1032 (3d Cir.1986) (unpublished opinion). For an elaboration of the duplication of issues, see note 3 *infra.* While we would not normally cite an unpublished opinion, since such an opinion has no precedential value, *see* Internal Operating Procedures of the United States Court of Appeals for the Third Circuit, Ch. 5(F)(1), we make reference to this opinion here simply to explain that several of the issues raised by the appellant have already been decided by this Court in his prior appeal.

spired to purchase large amounts of heroin for distribution in the Philadelphia area. According to the indictment, the drugs sold yearly by Martorano's organization were worth millions of dollars. The indictment further charged that Martorano had supervised a number of other people in the drug enterprise. Martorano was alleged to have made a substantial income through this drug network and to have invested his profits in legitimate businesses.

Because Martorano pled guilty, these allegations have not been tested by a trial. However, the government's proof offers included 106 tape-recorded conversations and the physical evidence that the government had seized—$130,000, 3,000 pounds of marijuana, two kilograms of heroin, and 300,000 fake quaaludes. At his plea hearing, after consulting with his counsel, Martorano agreed that the prosecutor's summary of the facts was accurate, Joint Appendix ("Jt. App.") at 136. It was read into the record as the factual basis for his plea. Jt.App. 127–134. At the first sentencing proceeding, Martorano only contested three of the facts in the government's sentencing memorandum that went to the defendant's guilt: (1) whether Martorano was a career criminal, (2) whether the street value of the drugs allegedly sold yearly by the enterprise was $75,000,000 (as the government alleged) or some lesser number of millions, and (3) whether the government, rather than Martorano, had supplied the heroin used in the sting operation that led to Martorano's arrest. Jt.App. at 158–160.

Martorano makes one additional factual allegation before us: his counsel contends that Martorano is of such subnormal intelligence that he could not have committed the acts charged. This contention has already been rejected by a panel of this Court, *United States v. Martorano*, No. 84–1568 (3d Cir., January 6, 1986) at 6 [782 F.2d 1032 (table)], and so is not properly before us now. Therefore, what is chiefly before us in this case is whether the sentence imposed for these crimes violated either the Eighth Amendment or the Due Process Clause of the Fifth Amendment, or whether the district court's denial of motions to

recuse invalidated the resentencing process.

Because it bears on the validity of the denial of the recusal motions, we will examine the procedural history of this case in some detail. Martorano retained Robert Simone, Esquire ("Simone") as his trial counsel. Prior to the date set for Martorano's trial, Simone was indicted in the Eastern District of Pennsylvania on tax evasion charges. As a result of Simone's indictment, the district judge held a hearing on March 15, 1984 at which he advised Martorano that his counsel had been indicted and that consequently a conflict of interest might arise between Martorano and Simone during the course of Martorano's trial. Judge Hannum asked Martorano thirteen questions which explored virtually every aspect of a conflict of interest. *See* Jt App. at 20–22. In response to these questions, Martorano indicated that he understood the risks inherent in continued representation by Simone, but stated that he wished for Simone to continue to represent him, thus waiving the question of a conflict of interest.

On June 4, 1984, Martorano pled guilty to all counts of the indictment. At this time, the prosecutor advised Martorano that he faced a maximum possible sentence of life imprisonment without possibility of parole, and that the mandatory minimum sentence for the offenses in question was ten years' imprisonment without possibility of parole. Jt.App. at 122–123. Judge Hannum asked Martorano if he understood that the maximum possible penalty was life imprisonment without possibility of parole and the forfeiture of drug profits, and Martorano replied that he did. Jt.App. at 123. The district court then accepted Martorano's guilty plea. Because Martorano had not also been advised that a fine could be imposed, he was brought back into court on June 19, 1984, and advised that his sentence could include a fine. Martorano was then given an opportunity to withdraw his guilty plea, but declined to do so.

In July 1984, one month after the plea hearing, but before sentencing, Judge Hannum testified pursuant to a subpoena in

Simone's tax evasion case. Judge Hannum gave only mild and general character testimony on Simone's behalf. *United States v. Simone*, No. 85–5800, Transcript of proceeding (E.D.Pa., 1986). Simone was acquitted of the charges. At the time of Simone's trial, the *Daily News*, a Philadelphia newspaper, criticized Hannum's testimony as "highly unusual" due to Simone's counsel's failure to comply with Rule 9 of the Rules of Civil Procedure for the Eastern District of Pennsylvania. Rule 9 requires that a party who wishes to subpoena a federal judge to give character testimony submit a request for a subpoena to the Eastern District, which must be approved by the chief judge of the Eastern District and by two other district judges before a subpoena may issue. After Martorano's sentencing, the *Philadelphia Magazine* reported federal prosecutors' critical comments that federal judges should not give character testimony. *See* Jt.App. at 56.

A few weeks later, on September 20, 1984, Judge Hannum sentenced Martorano to a nonparolable life sentence. Both Martorano and his counsel argued at the sentencing proceeding that mitigating factors were present, and Martorano's counsel argued that the defendant should receive the minimum sentence. Martorano's counsel also put on evidence concerning Martorano's alleged mental problems. His counsel did not argue, however, that the presentence report contained factual inaccuracies. *See* Jt.App. at 158–63 (defense presentation of mitigating evidence). Nor did Martorano's counsel then argue, as his current counsel does on this appeal, that Judge Hannum erred by not withdrawing from the case after his testimony.

Martorano now argues that because a newspaper had criticized Judge Hannum for testifying when the party calling him did not comply with local Rule 9 of the Eastern District of Pennsylvania, Judge Hannum attempted to refute that alleged implication that he was partial to Martorano's attorney by imposing a harsh sentence on one of that counsel's clients. All the facts on the basis of which the defendant now argues that Judge Hannum should have disqualified himself were available to

the defendant at the time of his initial sentencing proceeding, but were not raised by him until over a year later, when he was about to be resentenced after his first appeal to this Court.

After his initial sentencing, Martorano appealed his sentence to this court for the first time. *See United States v. Martorano*, 782 F.2d 1032 (3d Cir.1986). The Court found that the district court had failed to comply with certain requirements of Fed.R. Crim.P. 32 at the sentencing hearing. Rule 32(a)(1)(A) and (c)(3)(A) requires that the court "determine that the defendant and his counsel have had the opportunity to read and discuss the presentence investigation report ..." and that the defendant and his counsel have an opportunity to comment on the report and, if they wish, contest its validity through testimony or other evidence. Because the record did not reflect such a determination and such an opportunity, this Court vacated the sentence and required that the district court had to hold a new hearing and comply, on the record, with the requirements of Rule 32. *Martorano*, at 4–5.

For the first time, on remand, Martorano's current counsel filed a motion to recuse Judge Hannum from the resentencing proceedings based on Judge Hannum's having testified under subpoena as a character witness for Martorano's former counsel. Judge Hannum denied the recusal motion. He based this denial on his findings of fact about the sequence of events. Jt.App. at 55–56. Among other facts, Judge Hannum noted that, on April 24, 1984, six weeks before Martorano pled guilty, Simone had already pointed out to the district court the date on which he was scheduled to commence his tax evasion trial. Martorano thus pled guilty to all charges against him *after* Simone had advised the district court that he had been indicted on the tax evasion charges and *after* Martorano had already waived any conflicts of interest that might arise as a result of his counsel being indicted on these charges. *See* Jt.App. at 20–22. Judge Hannum received the subpoena requiring him to testify at Simone's trial after Martorano had pled guilty in the

face of being informed that, if he did so, he might receive the maximum sentence of life imprisonment without possibility of parole. Finally, Judge Hannum noted that the second, more severe newspaper criticism of his testifying occurred *after* Judge Hannum had first sentenced Martorano to life imprisonment without the possibility of parole. Judge Hannum therefore could not have been influenced by the second article in his original choice of Martorano's sentence. Judge Hannum ruled that these facts would not lead a reasonable person to question his impartiality, or to conclude that he had violated any canon or rule by testifying for Simone. He also ruled that only "speculation" would lead a reasonable person to conclude that he had imposed a harsh sentence to rehabilitate the alleged damage to his reputation assertedly caused by the first newspaper story. Judge Hannum therefore found no basis for recusing himself under 28 U.S.C. § 455(a). Jt.App. 56–57.

Judge Hannum also denied a motion that he recuse himself for personal bias under 28 U.S.C. § 144 as Martorano did not attach the required party affidavit alleging personal bias, and because Martorano's attorney's affidavit did not set forth facts that would lead a reasonable person to conclude that Judge Hannum was biased against the defendant. Jt.App. at 58–59.

Judge Hannum also held that assertions made by Kevin Rankin, Martorano's co-defendant, did not warrant his recusal from Martorano's resentencing. Judge Hannum had presided over Rankin's first trial on narcotics charges arising out of the same drug importation scheme that Martorano pled guilty to running. After Rankin's convictions were reversed on appeal, Rankin sought to have Judge Hannum disqualified from presiding at his retrial. In support of his motion, Rankin stated in an affidavit that Judge Hannum had struck

him, battered him, and chased him around the courtroom during the first trial. These charges gave rise to criminal charges against Rankin for making false statements and obstructing justice. *See* Jt.App. at 346–51, 360–61. Because Judge Hannum would necessarily be called as a witness on these charges, a different judge was assigned to preside at Rankin's retrial in the narcotics case. Judge Hannum held that a reasonable person could not conclude that reassignment of the *Rankin* case would affect his ability to be impartial with respect to Martorano. Jt.App. at 57.

The district court denied Martorano's motion to withdraw his guilty plea. Jt.App. at 186–87. Before addressing the merits of the motion to withdraw, Judge Hannum denied a renewed motion by Martorano that the judge remove himself from the case. Martorano based his motion on the assertion that he had been under the impression that Simone had reached a private agreement with Judge Hannum that a lesser sentence would be imposed. In denying this motion, Judge Hannum noted that there was no factual support for this allegation of an "off-the-record deal." Jt.App. at 185.

After denying Martorano's motion to withdraw his guilty plea, Judge Hannum again sentenced Martorano to life imprisonment without possibility of parole and ordered the forfeiture of some real property and other assets.

Because the defense contended that Martorano was mentally ill and of subnormal intelligence, the district court ordered that Martorano should undergo a study pursuant to 18 U.S.C. § 4205(c) (1982).[2] Accordingly, after a three month period, the district court conducted two hearings to determine whether a modification of Martorano's sentence was appropriate. One of these constituted a full evidentiary hearing

---

**2.** 18 U.S.C. § 4205(c) provides that

If the court desires more detailed information as a basis for determining the sentence to be imposed, the court may commit the defendant to the custody of the Attorney General ... for a study as described in subsection (d) of this section.... After receiving such reports and recommendations, the court may in its discre-

tion: (1) place the offender on probation as authorized by section 3651; or (2) affirm the sentence of imprisonment originally imposed, or reduce the sentence of imprisonment, and commit the offender under any applicable provision of law....

18 U.S.C. § 4205(c) (1982).

on Martorano's mental condition at which eight mental health professionals testified as to their assessments of his intelligence and psychological well-being. Jt.App. at 362–365. Judge Hannum specifically found that Martorano did not suffer from a mental deficiency or mental illness, but rather that he had attempted to feign these problems. Jt.App. at 638, 641–42. The court then affirmed its original sentence. Jt. App. at 690. This appeal followed.

## II.

We note initially that we decline to again address the numerous arguments made by the defense counsel that go to issues already decided by this Court.[3] Accordingly, the issues remaining before us are whether Judge Hannum abused his discretion by denying the motions that he disqualify himself and whether Martorano's sentence violated the Eighth Amendment.

## A.

We hold that Judge Hannum did not abuse his discretion by denying the three recusal motions.[4] We shall address two of these motions in turn.[5] With regards to each of them, we note that we would hesitate to find that the district judge improperly denied the recusal motions when they were only made for the first time on resentencing. Since the facts were available at the initial sentencing proceeding, the issue of laches may be dispositive. But, since there are independent reasons to find that Judge Hannum did not abuse his discretion in denying the motions, we discuss them here.

### 1.

■ Martorano claims that Judge Hannum abused his discretion by denying a recusal motion based on his testimony as a character witness at Simone's tax evasion trial. The test for recusal is whether the judge's impartiality might be questioned by a reasonable person. *Edelstein v. Wilentz*, 812 F.2d 128, 131 (3d Cir.1987); *United States v. Dalfonso*, 707 F.2d 757, 760 (3d

---

**3.** This Court has already held that the defendant's argument that he was not competent to make his plea was meritless. *Martorano*, at 6. The Court also rejected as meritless Martorano's argument that he entered his guilty plea without understanding what he was doing, that a factual basis for the plea was not established, and that the requirements of F.R.Crim.P. 11, which requires a plea colloquy between the judge and the defendant, had been breached. *Martorano* at 7. In addition, the Court found that Martorano's claim of ineffective assistance of counsel as to the plea was not raised in the district court and therefore could not be addressed on direct appeal. *Martorano*, at 6 (citing *United States v. Garcia*, 544 F.2d 681 n. 1 (3d Cir.1976)). These issues are discussed at Appellant's Brief, II.A., II.B., II.C., and II.E.

In addition, we decline to address at length the defense counsel's contention that Martorano's guilty plea was made unknowingly due to Martorano's alleged belief that his then counsel and Judge Hannum had made a private deal to give him no more than the minimum sentence. Appellant's Brief at 33–36. Judge Hannum found this allegation to be without factual support, and the defense counsel do not seriously contend that such a deal had in fact been made. *See* Appellant's Brief at 36. If the numerous and extensive psychological examinations of the defendant demonstrate little else, they do show that Martorano suffers even more than the rest of the world from the tendency to reshape the world into the world of his desiring. *See, e.g.,*

Appellant's brief at 35 n. 18 [summarizing evidence of this problem]; *Report of Albert Levitt*, Jt.App. at 81–82; *Report of Kenneth Kool, M.D.*, Jt.App. at 87, 88, 89, 90, 93. Unless it rises to the level of mental illness, as here it does not, the justice system is not responsible for a defendant's ability to enhance reality through fantasy. To rule otherwise would be to give criminal defendants complete control over whether a plea stood or not, post-sentence, based solely on whether they were willing to allege that they *imagined* that they would receive a lesser sentence due to an imagined off-the-record deal—and despite their disavowals of any private agreement in the Rule 11 colloquys. A criminal justice system that put such a premium on amelioratory fantasy would obviously be untenable.

**4.** In holding that we find that appellant has failed to meet the level of proof required for recusal, we do not mean to imply that we approve of Judge Hannum's testifying without a full and complete compliance with the applicable rule of his court, Local Rule 9 of the Eastern District of Pennsylvania.

**5.** Judge Hannum denied the second recusal motion, which sought recusal for personal bias under 28 U.S.C. § 144, because Martorano did not attach the required party affidavit alleging personal bias. Jt.App. at 58–59. As it was defective when made, we do not further address it here.

Cir.1983). Martorano makes two arguments that Judge Hannum's testimony created the appearance of such impropriety.

The first is the largely unsubstantiated assertion that Judge Hannum volunteered to testify at Simone's tax evasion trial. The basis of this assertion is an exchange between Judge Hannum and Simone at a scheduling conference several months before the putative date of Simone's trial. When Simone noted that Simone's trial couldn't take place July 9th if Simone was then busy with Martorano's trial, Judge Hannum observed, "Well, it might involve this judge. Do you follow me?" Jt.App. at 34. Simone replied that he did. *Id.*

This exchange is what defendant calls it, "murky". Appellant's Brief at 18. Defendant asserts that this exchange "suggests that Judge Hannum may have volunteered to testify for Simone. At the very least, it was clear that he was anything but a reluctant witness and had agreed to testify long before the subpoena was actually served." *Id.* Martorano goes on to claim that "the later issuance of a subpoena was no more than a device to lend an appearance of compulsion to the character testimony. If true, this would be a gross impropriety. Thus, the mere possibility that this might have happened certainly rises to the level of an appearance of impropriety." *Id.*

We do not draw the same inferences from the brief, ambiguous exchange as does the defendant. Since Simone already knew the date of his trial at the time of the scheduling conference, his attorney may have already contacted those witnesses whom he expected to call at trial, under the subpoena power or otherwise. Judge Hannum may have already known that he might be called through this normal aspect of Simone's counsel's trial preparation. Alternatively, Judge Hannum might have been a potential prosecution witness: why he thought that he might be involved in Simone's trial simply isn't clear. Martorano has made no effort to prove Judge Hannum actually did volunteer, but simply asserts that it is a "mere possibility". Simone's counsel presumably knows whether Judge Hannum volunteered to testify or not. Martorano could have sought to get his views by affidavit or otherwise. Motions to recuse under 28 U.S.C. § 455(a) must rest on the kind of objective facts that a reasonable person would use to evaluate whether an appearance of impropriety had been created, not on "possibilities" and unsubstantiated allegations. Martorano has not put forth this type of objective evidence here.

Martorano's second argument that Judge Hannum should have recused himself is that the failure of Simone's attorney to comply with the requirements of Rule 9 created an appearance of impropriety, and that Judge Hannum improperly acted to counter this alleged appearance of impropriety by imposing a stiff sentence. Martorano alleges that this alleged inverse favoritism was itself an impropriety. As Judge Hannum pointed out in denying this motion, the second newspaper article, the only one critical of Judge Hannum personally for testifying, appeared *after* he had first sentenced Martorano to life imprisonment without the possibility of parole. As noted above, Judge Hannum pointed out that he was not subpoened to testify until after he had first imposed the sentence. Thus these events could not have affected his initial choice of the nonparolable sentence, which he then selected again at resentencing. As Judge Hannum noted, only "speculation" would lead a reasonable person to conclude, absent any evidence, that he had reimposed the same sentence not for the factors that underlay his original choice, but to rehabilitate the damage allegedly done to his reputation by the newspaper stories. Jt.App. at 56–57. Again, since the test for recusal is a reasonable person one, a movant must supply some objective facts that support his position, not mere speculation.

### 2.

■ Martorano also moved that Judge Hannum recuse himself on resentencing based on the assertions that one of Martorano's co-defendants, Kevin Rankin, made regarding Judge Hannum's alleged miscon-

duct in a separate trial. As discussed above, Rankin alleged, among other things, that Judge Hannum had physically abused him. The defendant argues that any annoyance that Judge Hannum may have felt against Rankin as a result of these allegations, and Judge Hannum's consequent removal from Rankin's trial, would be transferred to Martorano, since Martorano and Rankin were close associates in the drug importation business. As Judge Hannum pointed out in denying the motion to recuse on that basis, Martorano offered no evidence from which it could be inferred that Judge Hannum harbored ill will against Rankin, or that Judge Hannum would transfer any feelings that he had about Rankin to Martorano. Jt.App. at 57 n. 7. Judge Hannum therefore found that a reasonable person would not conclude that Rankin's accusations and the consequent reassignment of the Rankin case would affect his ability to be impartial over Martorano's case. *Id.* So do we. By training and inclination, judges meet media criticism of their actions with robust insensitivity.

### B.

■ Martorano argues that his sentence of life imprisonment without possibility of parole violated the Eighth Amendment's prohibition against cruel and unusual punishment and the Due Process Clause of the Fifth Amendment. He further argues that the district court abused its discretion by mandating the maximum sentence. We find all these contentions to be without merit.

Martorano's Eighth Amendment claim has already come before this Court, *United States v. Martorano*, 782 F.2d 1032 (1986), but the Court withheld judgment, since it remanded Martorano's case for resentencing. We find unpersuasive Martorano's argument that "the 30 months which have passed have allowed Martorano to develop substantial documentation of the factors which make his sentence disproportional to his particular offense and circumstances." Appellant's Brief at 41.

The Eighth Amendment does proscribe punishment "grossly disproportionate to the severity of the crime." *Ingraham v. Wright*, 430 U.S. 651, 667, 97 S.Ct. 1401, 1410, 51 L.Ed.2d 711 (1977) (citing *Weems v. United States*, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910)). The leading case striking a sentence of other than of the death penalty for gross disproportionality is *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). In *Solem*, the Court struck down a nonparolable life sentence under South Dakota's habitual criminal statute for uttering a bad check, the defendant's seventh nonviolent felony. The Court stated that " '[o]utside the context of capital punishment, *successful* challenges to the proportionality of particular sentences [will be] exceedingly rare.' " *Solem*, 463 U.S. at 289–90, 103 S.Ct. at 3009–10 (quoting *Rummel v. Estelle*, 445 U.S. 263, 272, 100 S.Ct. 1133, 1138, 63 L.Ed.2d 382 (1980)) (emphasis the Court's). Martorano has provided little new documentation on this appeal and none that demonstrates that his case is one of these rare successful challenges.

*Solem* held that Eighth Amendment proportionality analysis should be guided by the following factors: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for the commission of the same crime in other jurisdictions. 463 U.S. at 292, 103 S.Ct. at 3010–11. These factors suggest that Martorano's sentence was not grossly disproportionate. Martorano committed an extremely grave offense, the importation of thousands of pounds of drugs. While the penalty is severe, it is not harsh, given the havoc that the drug trade wreaks on our nation. A wholesale importer bears a greater responsibility for this havoc than even a small-scale pusher who has been repeatedly convicted, since a kingpin's large scale importation of foreign drugs keeps many pushers in business and wholesale importers are essential to the drug trade in its current, large proportions in a way that pushers are not. Nor was Martorano's sentence incommensurate with sentences imposed on other

wholesale drug dealers.[6] Martorano does not discuss these factors, and he has in fact introduced little if any "substantial documentation." Martorano's sentence does not violate the Eighth Amendment.

We are equally unpersuaded by Martorano's argument that Judge Hannum violated Martorano's due process rights by imposing a life sentence without possibility of parole.[7] Due process may require that a convicted defendant have an opportunity to present evidence of extenuating circumstances. *United States ex rel. Welch v. Lane,* 738 F.2d 863, 865 (7th Cir.1984). Martorano had that opportunity. Similarly, due process requires that a convicted person not be sentenced based on "materially untrue" assumptions or "misinformation." *Townsend v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948). However, a district court judge's discretion

in sentencing is "largely unlimited either as to the kind of information he may consider, or the source from which it may come." *See United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). In the absence of error or clear misinformation,[8] a sentencing judge may consider all circumstances that shed light on a convicted person's background, history and behavior. At the initial sentencing hearing, Judge Hannum made specific findings on the factor underlying his sentence, *see* Jt.App. at 171 (the danger to society posed by drugs). At the resentencing proceeding, Judge Hannum again noted that the need to protect society from the scourge of drugs and indicated that Martorano's unwillingness to indicate repentance by cooperating underlay his sentencing decision. *See* Jt.App. at 674–85.[9] The dis-

6. Life sentences without possibility of parole were imposed and upheld in *United States v. Milburn,* 836 F.2d 419, 421–22 (8th Cir.1988); *United States v. Valenzuela,* 646 F.2d 352, 354 (9th Cir.1980); *United States v. Jeffers,* 532 F.2d 1101 (7th Cir.1976), modified on other grounds, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977); *United States v. Sperling,* 506 F.2d 1323 (2d Cir.1974), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975).

7. We decline to address Martorano's argument that Judge Hannum abused his discretion by imposing the nonparolable life sentence. The Supreme Court has stated, "once it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Dorszynski v. United States,* 418 U.S. 424, 431, 94 S.Ct. 3042, 3047, 41 L.Ed.2d 855 (1974). That is the case here. While we do not state categorically that no mode of imposing sentence could constitute an abuse of discretion, we note that sentences that are within the statutory range that conform to the dictates of the Eighth Amendment and the Due Process Clause will usually not constitute an abuse of discretion. *See United States v. Pugliese,* 805 F.2d 1117, 1122 (2d Cir.1986) ("a sentence imposed by a district court within statutory limits, and not illegal, or based on inaccurate information, or procedures that offend due process will not be interfered with on appeal"). For the reasons discussed in our examination of the Eighth Amendment and Due Process issues, that is so here.

8. This Court has recently held that where a defendant specifically invokes his Fifth Amendment privilege against incrimination in a timely manner, a sentencing court may not use his failure to waive that right and cooperate with

the authorities as negative evidence to penalize him in deciding upon the appropriate sentence. *United States v. Heubel,* 864 F.2d 1104 at 1111 (3d Cir.1989). But the Court went on to specifically exempt from its holding cases where "a defendant does not invoke his or her Fifth Amendment privilege ... assuming another valid explanation is not given ..." and to state that in these cases it might be appropriate "for a sentencing court to consider [a defendant's] failure to cooperate with the authorities as evidence that he or she is not ready to show contrition and begin the rehabilitative process." *Id.*

Martorano's case fits in the Court's exception rather than the rule. While the district court gave Martorano an opportunity to cooperate, and specifically relied on his absence of cooperation in imposing the sentence that he did at resentencing, Martorano did not invoke his Fifth Amendment right in any way in electing not to cooperate. *See* Jt.App. at 674–89 (discussion at the resentencing hearing as to whether Martorano would be willing to cooperate and as to why he would not). The district court was therefore at liberty to consider Martorano's failure to cooperate as evidence of a lack of contrition in imposing sentence.

9. Martorano also argues that the court should have taken account of the fact that he pled guilty in selecting a sentence. Guilty pleas usually result in a lesser sentence, but they need not. Here Martorano pled guilty one week after the prosecution made its detailed proof offers available. His plea was almost certainly at least in part a result of an assessment of his chances of acquittal of this—and other—crimes. In return for his plea of guilty, Martorano received the government's assurance that it would not

trict court does not deny a defendant due process when it relies on uncontested aggravating factors in setting a sentence, particularly where, as here, the district court makes specific findings that the defendant's evidence on the issue of the asserted mitigating factors is not credible. Jt.App. at 171.

### III.

We find that the district court did not abuse his discretion by denying the three recusal motions. The defendant's sentence does not violate the Eighth Amendment or the Due Process Clause of the Fifth Amendment. Accordingly, the judgement of the district court will be affirmed.

prosecute him for any other offenses committed during the time period of the offenses to which he pled guilty. At the time the deal was consummated, neither Martorano nor the government knew what the other was giving up. The nature of our system, which separates sentenc-ing from the guilt determination, means that a judge may always choose a sentence that exceeds what a jury, a federal prosecutor or defense counsel had hoped would be imposed. Such a normal divergence is not cause for vacating a sentence.