**UNITED STATES of America, Plaintiff,**

v.

**Thomas P. GORDON, Sherry L. Freebery, and Janet K. Smith, Defendants.**

**No. CRIM.A.04–63–KAJ.**

United States District Court, D. Delaware.

Feb. 3, 2005.

Colm F. Connolly, Leonard P. Stark, U.S. Attorney's Office, Wilmington, DE, for Plaintiff.

Hamilton P. Fox, III, Washington, DC, Joseph A. Hurley, Joseph A. Hurley, Wilmington, DE, for Defendants.

### MEMORANDUM ORDER

JORDAN, District Judge.

*INTRODUCTION*

I have before me a motion to recuse (the "Motion") that was presented orally by counsel for defendant Gordon and counsel for defendant Freebery at a hearing in chambers on January 26, 2005.[1] Those defendants have filed a joint letter memorandum, dated January 21, 2005 (Docket Item ["D.I."] 58), and a supplemental "Memorandum on Recusal," filed on January 31, 2005 (D.I. 62), laying out arguments under 28 U.S.C. § 455(a) and Canon 3C of the Code of Judicial Conduct which, they say, compel me to recuse myself and seek the intervention of the Chief Judge of

---

1. The hearing took place in chambers at the request of the moving defendants (the "Defendants") because, in the first instance, they were approaching with understandable circumspection the topic of recusal based on allegations relating to the extrajudicial activities of a judge of this court. Nevertheless, both the Government and the Defendants have acknowledged that the submissions in support and in opposition to the Motion and the transcript of the hearing should be unsealed, given the public character of these proceedings. I agree with that conclusion and have ordered that they be unsealed.

the United States Court of Appeals for the Third Circuit to appoint a judge from outside this district to preside in this case. The United States has filed an opposing letter memorandum (D.I.59) and a "Supplemental Memorandum in Opposition to Defendants' Request for Recusal and Transfer" (D.I.63). For the following reasons, I am granting the Motion.

*BACKGROUND* [2]

This case is the culmination of a lengthy and highly publicized investigation into alleged political corruption in the government of New Castle County. On May 26, 2004, a federal grand jury returned an eleven count indictment leveling conspiracy, racketeering, wire fraud, and mail fraud [3] charges against Thomas P. Gordon, who [was] the elected County Executive, Ms. Freebery, who [was] the Chief Administrative Officer of the County ..., and Janet K. Smith, who served as an Executive Assistant in the Gordon Administration.

(D.I. 35 at 1.)

Defendants Gordon and Freebery have now taken the position that one of my colleagues on this court, United States District Judge Joseph J. Farnan, Jr., possesses important evidence in the case and "that the facts relevant to the allegations in this indictment cannot be told without involving Judge Farnan." (D.I. 58 at 1.) They go on to assert that "the defense intends to ask the court to issue a subpoena to Judge Farnan and entities owned or controlled by him for documents pursuant to [Federal Rule of Criminal Procedure] 17(c)." (*Id.* at 4.) The Defendants list a number of instances of what they assert are business and personal connections between Judge Farnan and defendants Gordon and Freebery. Without repeating those allegations in their entirety, I will address one of those connections which, at least superficially, has a sufficient relation to allegations in the indictment that a non-frivolous issue of relevancy is raised. Beyond what I expressly state herein, however, I am neither saying nor implying anything about the credibility of the Defendants' allegations or their ultimate relevance to the case. Those are matters to be addressed, if at all, at a later time by another judge.

A connection that satisfies me that recusal is required relates to money that Ms. Freebery allegedly acquired unlawfully and then invested in a real estate deal with Judge Farnan.[4] According to the Defendants, Judge Farnan "met numerous times with Ms. Freebery and [her son] Mr. Duffy to plan a real estate development project in which Ms. Freebery could invest and Mr. Duffy could be employed." (*Id.* at 3.) The Defendants further assert that Judge Farnan encouraged Ms. Freebery to raise the money for her investment by requesting a large sum from Ms. Lisa Dean Moseley, a wealthy woman who had a real estate project of her own pending review by the County Law Department. (*Id.*) They say that "[a]fter receiving the money from Ms. Moseley, Ms. Freebery gave Judge Farnan a check for $600,000 (written to Route 22 Enterprises, a Farnan family corporation)." (*Id.*) In support of these allegations, the Defendants have tendered a declaration [5] from Mr. Duffy, as

---

**2.** The background information provided in this section is generally drawn from the parties' submissions and does not constitute findings of fact.

**3.** Not all of the defendants are charged in all of the counts.

**4.** Other issues raised by the Defendants in their argument for recusal also give me pause, but, given my view of the connection discussed herein, I need not consider those additional issues.

**5.** The declaration is dated January 28, 2004, which, it appears, is simply in error, the actu-

well as a copy of documents purporting to memorialize business interactions involving members of the Farnan family, including Judge Farnan, and Ms. Freebery and her son. (*See* D.I. 58 at Exs. A—B; D.I. 62 at Exs. A1–C.) Ms. Freebery's solicitation of funds from Ms. Moseley is related to allegations in Counts I, X, and XI of the Indictment. (*See* D.I. 1.)

According to the Defendants, Judge Farnan's interactions with Ms. Freebery during the time that she was obtaining money from Ms. Moseley and investing it with Judge Farnan are likely to be the subject of dispute during pretrial proceedings relating to Rule 17(c) subpoenas [6] and at the trial. (*See, e.g.,* D.I. 61 at 4–6.)[7] They particularly emphasize that, since *scienter* is an element of the fraud charges, they are entitled to describe the interactions between Ms. Freebery and Judge Farnan, because his alleged statements to her during the period in question bear on her state of mind and her understanding of the lawfulness of her behavior. (*See* D.I. 61 at 5–6, 27–28.)

The Government's response is that it is purely speculative that Judge Farnan will seek to quash a subpoena served upon him (*see id.* at 7), that any involvement Judge Farnan may have had is irrelevant in any event (D.I. 59 at 3–5), and that public confidence in the impartiality of the court will be injured if I recuse myself (*see id.* at 6–7; D.I. 61 at 30–31). The Government asserts that the arguments for recusal are based on nothing more than speculation and innuendo, which cannot be accepted as reasons for recusal. (*See, e.g.,* D.I. 59 at 6; D.I. 63 at 3.)

## DISCUSSION

The Defendants' Motion is based on the recusal statute set forth at 28 U.S.C. § 455(a),[8] which states, "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The standard established by the statute is an objective one. "[W]hat matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States,* 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Put another way, I must recuse myself if "a reasonable man knowing all the circumstances would harbor doubts

---

al date of the declaration likely being January 28, 2005. (*See* D.I. 62 at Ex. A.) The declaration paints a somewhat different picture than the rhetoric of the Defendants' opening letter memorandum does. Mr. Duffy states that Judge Farnan "suggested . . . that if Ms. Mosely [sic] gave us money, we could invest it in a real estate project with him." (D.I. 62 at Ex. A., ¶ 2.)

6. Federal Rule of Criminal Procedure 17(c) provides as follows:

Producing Documents and Objects. (1) In General. A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them. (2) Quashing or Modifying the Subpoena. On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

7. D.I. 61 is the transcript of the conference of the hearing held on January 26, 2005.

8. The Defendants also make reference to Canon 3C of the Code of Judicial Conduct, which similarly states, in relevant part, "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned . . . ." In light of the nearly identical language of section 455(a) and the quoted portion of Canon 3C, the Defendants quite rightly treat them as requiring adherence to the same objective standard. I therefore address the Motion in light of the statute, without further reference to the Code of Judicial Conduct.

concerning [my] impartiality." *United States v. Dalfonso*, 707 F.2d 757, 760 (3d Cir.1983) (internal citation omitted). That standard is in keeping with the plain purpose of the statute: "[t]he goal of section 455(a) is to avoid even the appearance of partiality." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) (internal quotation marks and citation omitted). Because recusal is mandated whenever "an appearance of partiality is created even though no actual partiality exists[,]" *id.*, the statute has been held to require recusal even when the judge in question was actually unaware of the circumstances giving rise to the appearance of partiality.[9] *See id.* at 859, 108 S.Ct. 2194 ("The judge's lack of knowledge of a disqualifying circumstance may bear on the question of remedy, but it does not eliminate the risk that 'his impartiality might reasonably be questioned' by other persons."). Recusal cases are "extremely fact driven[,]" *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995), and therefore "must be judged on [their] unique facts and circumstances more than by comparison to situations considered in prior jurisprudence." *United States v. Jordan*, 49 F.3d 152, 157 (5th Cir.1995).

■ The Government has expressed concern that if I recuse myself I will be doing so on the basis of no more than slanderous innuendo.[10] (*See, e.g.*, D.I. 59 at 6–7.) According to the Government, the "Defendants have offered nothing that would make it reasonable for a fully informed member of the public to question the ability of this Court to preside over this case in an impartial manner." (*Id.* at 6.) I must disagree for two reasons.

First, I disagree that the Defendants have "offered nothing[.]" It is apparent from the record that there was some interaction between Judge Farnan and the Defendants. In and of itself, there is nothing remarkable about that. Because of the experience that all three had in County government,[11] it would be remarkable if their paths had not crossed. It is the particulars of their relationship and interactions that are at issue. Those historical facts will obviously be hotly contested, but, in spite of the parties' radically different view of the facts, it must at least be conceded that the Defendants' allegations

9. Since recusal is required even when a judge does not know of the circumstances giving rise to the appearance of partiality, it can be said that the urgency to avoid such an appearance trumps, to some degree, the "knowing all the circumstances" aspect of the objective standard. If one truly knew all the circumstances, including that the judge had no idea there was a conflict, one would be hard pressed to say that the judge was partial, either in fact or in appearance, since knowing all the circumstance must include knowing the judge's ignorance of the conflict.

10. While focusing on the innuendo about Judge Farnan, the Government is also at pains to point out that Ms. Freebery has publicly denounced an earlier decision of mine in this case. (*See* D.I. 59 at 7, Ex. A.) In statements to local media, she implied that the ruling was unfavorable to her because of a personal friendship between me and the United States Attorney. (*See* D.I. 59 at Ex. A.) She also asserted that the decision was "like turning democracy on its head[,]" and that the reasoning behind it was "flimsy, whimsical, [and] far-reaching[.]" In a "there-she-goes-again" type of argument, the Government asserts that Ms. Freebery's comments about my decision and, by implication, about my competence and impartiality, support their contention that the Defendants are simply subjecting Judge Farnan to slanderous innuendo in an effort to force my recusal. But whether or not Ms. Freebery is a serial slanderer, as the Government implies, has nothing to do with the real and immediate recusal issue I face and discuss here.

11. Among the offices Judge Farnan has held during his long career in public service is New Castle County Attorney, a post in which he served when both of the Defendants were County police officers. (*See* D.I. 58 at 2.)

about Judge Farnan's business dealings with Ms. Freebery cannot be ignored as being based on a frivolous assertion of relevancy.

Even the Government seems to acknowledge as much when it says that the threatened litigation relating to a subpoena for Judge Farnan's records "will be largely one-sided." (D.I. 63 at 18.) To be largely one-sided is, by definition, to be possessed of something more than one side, and that is the problem. The other side here includes the documents the Defendants have made of record and that they say tell a specific story. Someone will have to decide whether the story the Defendants want to tell has sufficient relevance and plausibility to permit its further exploration in this case. Some judicial officer must determine how far to permit the defense to develop evidence about Judge Farnan's interactions with Ms. Freebery, and how much of any such evidence can properly be presented at trial. In short, despite the Government's assertion that the Defendants have adduced "nothing" to raise a recusal issue, there is enough more than "nothing" in play that the Defendants' assertions cannot simply be dismissed out of hand.[12]

That conclusion leads to the second reason I must disagree with the Government's view of the recusal Motion. Since a defense effort to subpoena Judge Farnan cannot be rejected without consideration, the inquiry necessarily turns to whether reasonable people could question my role as the one doing the considering. I think they could. Indeed, I would be surprised if they did not. This is a relatively small court, with four active trial judges, including me. Without presuming to speak for

anyone but myself on how an objective observer would see this court, I am persuaded that one could reasonably believe that we four judges see each other regularly, that we have developed professional respect, appreciation, and friendship for one another, and that a natural empathy may be unavoidable in seeing a colleague's reputation and privacy threatened by embroilment in a criminal prosecution. Real or not, partiality under these circumstances could fairly be perceived to be an issue. Since the judicial role must be filled by one whose partiality cannot be reasonably questioned, I cannot continue in this case.

The Government asserts that, because Judge Farnan is not a party, the prospect of his being required to give evidence is insufficient to require my recusal. While it is true that there is authority for the proposition that a judicial colleague's appearance as a witness may be insufficient to cause recusal, see *Jordan v. Fox, Rothschild, O'Brien & Frankel*, No. Civ. A. 91–2600, 1995 WL 141465, at *2 (E.D.Pa. Mar. 30, 1995), that misses the crucial point in this case. It is not enough to simply ask what role may be thrust upon the judicial colleague; one must also ask what that colleague has at stake. I would expect that, whether or not he is a party to this case, Judge Farnan will vigorously resist the Defendants' efforts to involve him in this matter. People rightly treasure their good names. That reputational interest is clearly at stake here for Judge Farnan. No reasonable person would view the Defendants' effort to involve him in the case as a simple matter of taking some factual testimony from a disinterested third party. Their effort appears calculated to cast

---

12. This case is thus easily distinguished from precedent cited by the Government in which judges have not recused themselves from cases where manifestly baseless claims have been made against fellow judges for conduct occurring in the accused judge's judicial capacity. This is not to say that the Defendants' allegations in this case have any merit, only that they have sufficient superficial relevance to require judicial scrutiny.

Judge Farnan as a sort of legal Svengali, manipulating the impressionable Ms. Freebery into taking steps that, because of the Judge's persuasive force, she could not have understood were wrongful. For anyone, particularly someone who, like Judge Farnan, has spent a lifetime building a reputation for good character and public service, such a defense strategy threatens something more precious than the mere dollars at issue between the parties in most civil cases. The stakes here are high.[13]

The facts I face are significantly different and distinguishable from cases cited by the Government. For example, in *United States v. Cutler*, 796 F.Supp. 710 (E.D.N.Y.1992), the party moving for recusal was criminal defense counsel who sought to disqualify the entire district court based on his own allegedly contemptuous conduct during the course of a prosecution. Thus, the motion was based on the decision of a judge to hold someone in contempt, a clear example of a judge acting in his judicial role, which is virtually never a basis for recusal. *Liteky*, 510 U.S. at 555, 114 S.Ct. 1147 ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion"). Moreover, in denying the motion to recuse, the court observed that controlling appellate authority "expressly approved of reassigning criminal contempt trials to another judge within the same district as the judge who held the defendants in contempt." *Cutler*, 796 F.Supp. at 712.

In *United States v. Weidner*, Nos. 02–40140–01–JAR, No. 02–40140–02–JAR, 2003 WL 21183177 (D.Kan. May 16, 2003),

the court faced a recusal motion leveled at all the judges of a district court based on comments that one judge had made in the press. The defendant asserted that that judge might therefore be a witness. The court rejected the motion because, "[t]he basis for this assertion is not stated, and this Court will not consider an unfounded assertion or speculation in deciding whether a recusal of the entire district is warranted." *Id.* at *3. In other words, unlike the case at bar, there really was nothing proffered in support of the recusal motion in that case.

Finally, in *Jordan v. Fox, Rothschild, O'Brien & Frankel*, No. Civ. A. 91–2600, 1995 WL 141465 (E.D.Pa. Mar. 30, 1995), the court addressed a circumstance where a judge might be a witness in a civil case because of his prior role as an attorney in a transaction affecting the plaintiff. *See id.* at *1, n. 2. There was no indication that, were the presiding judge's colleague in fact called as a witness, the matter would involve the same risk to reputation as this criminal case threatens or that the witness would seek to quash a subpoena and thereby put his interests in issue, as may well be the case here.

Three final arguments of the Government's deserve response. First, the Government asserts that "what is really motivating Defendants is a desire to 'shop' for another judge" (D.I. 59 at 7), and, second, in a similar vein, that granting recusal "would reward Defendants for threatening litigation[.]" (D.I. 63 at 22.) Third, as noted earlier, the Government also contends that recusal will damage the reputation of this court as an impartial forum.

---

**13.** The following lines from Shakespeare are famous for good reason:

Good name in man and woman, dear my lord,
Is the immediate jewel of their souls:
Who steals my purse steals trash; 'tis something, nothing;

'Twas mine, 'tis his, and has been slave to thousands;
But he that filches from me my good name
Robs me of that which not enriches him
And makes me poor indeed.
*Othello, Act 3 scene 3*

(*See* D.I. 59 at 6–7; D.I. 61 at 30–31.) As to the first of those arguments, regardless of whether the Government has correctly apprehended the Defendants' motives,[14] those motives are of minor, if any, relevance. My decision cannot be based on whether doing the proper thing happens also to satisfy some improper motive of the Defendants'. The test is a purely objective one.

Similarly, as to the second argument, my decision has nothing to do with rewards or punishments. I have determined that the "threat" the Defendants have made to litigate over a subpoena for Judge Farnan's records will involve deciding matters that I cannot properly decide because of reasonable questions that would arise about my impartiality. From that determination, recusal follows, regardless of whether it is to the Defendants' liking.

Finally, as to the third argument, I cannot control public reaction to this or any other decision I am called upon to make, but I believe recusal will enhance rather than damage public confidence in the court. This is not a circumstance where the judges of this district court simply walked away from a challenging case.[15] Having received the assignment to preside,[16] I have endeavored to do so with the impartiality that the public and all involved have a right to expect. Nevertheless, under the particular circumstances [17] that have now been placed before me by Defendants' Motion, I do not believe the law permits me to continue as the presiding judge. I hope that dispassionate observers will agree that my decision on this Motion is fair and appropriate, but, regardless of public reaction, I am persuaded it is the right step.

## CONCLUSION

Accordingly, I hereby recuse myself from further proceedings in this action and will refer the matter to the Chief Judge of the United States Court of Appeals for the Third Circuit with the request that it be assigned to a judge from outside of this district, pursuant to 28 U.S.C. § 292(b) ("The chief judge of a circuit may, in the public interest, designate and assign temporarily any district judge of the circuit to hold a district court in any district within the circuit.")

**14.** My sense of self-importance is not so highly developed that I am prepared to say the Defendants' Motion is all about me. Inherent in the arguments they make is a claim of concern for the public's perception of the fairness of these proceedings, and I do not discount entirely the sincerity of that concern, although Ms. Freebery's earlier comments to media seem to support the Government's suspicions. (*See supra* note 10.)

**15.** Recusal is not an easy step to take and is certainly not a welcome one. This case has already been and will continue to be a more complex and time-consuming case than is typical. I am thus reluctant to shift the burden of administering it to another judge, who will undoubtedly have a schedule that cannot easily accommodate the three months of trial time the parties anticipate will be needed in this matter.

**16.** The other judges of this court had already found it necessary to recuse themselves in this case.

**17.** My decision in this matter is limited to the specific circumstances created in the context of this criminal prosecution. I intend no comment about my service in civil cases involving allegations about the Defendants.